UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2004 FEB -2 P 12: 26

Jane Doe, Jr. PPA Jane Doe Sr., et al.   :
Jane Doe, Sr. Plaintiff

:     CIVIL NO:3:03 CV 571 (SRU)

City of Waterbury et al.
            Defendants

:    January 28, 2004

MEMORANDUM OF LAW IN
RESPONSE TO AND IN OBJECTION TO POST-HEARING MEMORANDUM OF
PROPOSED INTERVENOR, DARLENE DUNBAR COMMISSIONER OF CHILDREN AND
FAMILIES DATED JANUARY 16, 2004

I.    Failure to Adequately Address Court's December 22, 2003 Concerns

The proposed intervenors were directed by this Court on December 22, 2003 to submit a supplemental memorandum indicating the qualifications of the attorneys for the Commissioner of Children and Families, (hereinafter referred to as DCF) and to address any potential conflict of interests issue between the plaintiff mothers and the existing private counsel prosecuting the claims in the above referenced matter. The qualifications of the proposed intervenor's attorneys are not discussed in its brief as requested by this Court.

The only references to its attorney's qualifications are that members of the Attorney General's Office are members in good standing of the State of Connecticut and of this Court. There is no mention as to the number of successful plaintiff actions that have been brought on behalf of DCF by the Attorney General's Office nor its alleged success in these matters. While we were able to note a number of past and pending cases in which DCF was being sued for their inability to properly protect the interests of minors; we could not

- 1 -

locate any cases in which DCF was suing on behalf of a minor due to an action by a City official that violated the rights of a minor.

In fact, in DCF's own supplemental brief it cited the decision of Tatiana J., In re 2002 WL 31606587 (Conn. Super.2002). In this decision, DCF notes continuing involvement with the plaintiff's family as early as 1993 and as this Court is aware no action was taken to remove the children until after Mr. Giordano's actions were discovered in a corruption investigation by the FBI. This lack of action clearly demonstrates DCF's inability to protect the rights of the minor children in this action and may also through further discovery in this action by the plaintiffs and their proposed guardian ad-litem indicate a conflict on the part of DCF because of its potential for being a defendant in this action.

In addition, while DCF is correct that it will not reduce the plaintiff's recovery by any fees or costs; we question the incentive of DCF to achieve the maximum compensation for the minor children beyond recouping the State lien that it will place on this litigation.

II. Conflict of Interests Issue

At page 9, ¶2 of DCF's supplemental brief, it cited, with approval, the appointment of a guardian ad litem as requested by the mother in Docket No. 3:03 CV 571 and the mother's removal of herself as next friend of the minor child, which DCF felt was in conformity with a Superior Court Judge's assessment of this mother's judgment. Clearly, the mother's aforementioned action taken in this litigation removes any and all conflict of interests asserted by the proposed intervenor. The child victim will have the representation of a well-qualified and unbiased representative who will insure that the best interests of the child are represented as required by Connecticut and federal law. Attorney Jenkins unlike DCF, will be truly dedicated to the best interests of the child on whose behalf she seeks to

litigate. Praseuth v. Werbe, 1995 U.S. App. Lexis 399911 (2d. Cir. 1995). Further, the plaintiff who will eventually replace the mother in this case will have representation by private counsel who are not encumbered by anything remotely approaching a conflict of interests, unlike DCF, which could end up being a defendant in this case.

There has been no argument advanced by the Proposed Intervenor regarding the qualifications of Attorney Gerald L. Harmon, Attorney Erskine D. McIntosh, or Attorney Lynn Jenkins who have all argued a significant number of cases before this Court and will be dedicated to the best interests of the minor child in this matter.

III.   DCF Incorrectly Asserts that It Is the Sole Decision Maker With Regard To Representation of the Minor Child in This Action.

DCF, to date, has taken no steps to protect the legal interests of the minor child involved in this action to vindicate her civil interest as a tort victim. DCF has neither filed a notice to sue as required by Connecticut General Statutes nor filed any action in Federal Court on its own to establish a legal action on behalf of the minor child. In fact, DCF waited until after actions had been filed on behalf of both plaintiffs to bring the proposed motion to intervene and seek control over this litigation.

As previously discussed in our original objection to DCF's motion to intervene, at the time this action was brought by plaintiff's, DCF was only appointed as guardian of the person not a general guardian as DCF incorrectly asserted. A guardianship of the person is distinct from a guardian of the estate. Section 45a-617 CGS is the statute under which a guardian of the person is created for probate court purposes.

No where in Connecticut General Statute Section 45a-604 does it state that this guardianship includes the decision of whether and through whom to prosecute a civil rights action relating to a child's sexual abuse as DCF incorrectly asserts.

The case of Williams v. Cleveland, 76 Conn. 426, 434 (1904) is relied upon in error and is incorrectly cited by DCF. DCF cited this case for the general rule that when a guardian has been appointed for a child, the "guardian is usually the proper person to bring an action on behalf of the child." This rule is correctly stated, but alas, was not the rule followed in Williams v. Cleveland. In Williams, the child had a guardian of the person, the father, and a guardian of the estate, a Mr. Strong. In that case, the issue was that Mr. Strong, guardian of the estate, refused to prosecute an appeal of a probate court ruling settling a lawsuit upon the advice of his counsel who was also counsel for the entities being sued by the child's mother's decedent estate. In Williams, the father—guardian of the person, wanted to sue on behalf of the child, but the Probate Court refused to permit him to sue. A Superior Court judge affirmed the Probate Court and the Supreme Court determined that this was error and reversed the Superior Court judgment, which had affirmed the Probate Court ruling. In the Williams case the guardian of the minor's estate refused to take an appeal on behalf of the minor in conflict with the minor's wishes who at the time of the action was nineteen years of age. The court ruled to allow the appeal to protect the interests of the minor in that case. Id. at 432, 434. Williams is also distinguishable because in our case, the rights of the minor child have been fully protected by the current counsel for the plaintiffs and the guardian ad litem as previously appointed by this Court in contrast to DCF which has taken no steps to prosecute the child's civil claims, except to attempt to take over this litigation. Further, Williams went on to discuss how suit may be brought and prosecuted by a **"next friend"** even where a guardian is in the picture:

> But there are frequently cases when the infant may properly sue by next friend, notwithstanding the existence of such guardian, as when the guardian is absent, or is unwilling or unable to institute or prosecute the required action or appeal,

- 4 -

> and especially when though declining to take such action
> himself, he does not forbid such proceeding, or <u>when he is
> disqualified by interest hostile to that of the infant</u> or is for
> other reasons an improper or unsuitable person to prosecute
> such actions in behalf of the ward. In such cases, and in the
> absence of any statute requiring infants to sue by probate
> guardian, there seems to be no good reason why actions and
> appeals may not at least be commenced by an infant by next
> friend. (Emphasis supplied)

<u>Id.</u>, at 432.

DCF also incorrectly cites <u>Orsi v. Senatore</u> 230 Conn. 459 (1994). In this case, a guardian and a guardian ad litem had already been appointed to represent the child's interest. Thereafter, a third party (the foster parent) sought standing to sue and the trial court had to determine if the foster parent had a right to bring this action. <u>Id</u>. at 470. The trial court said that the foster parent could not bring suit, the Appellate Court said the foster parent could bring suit and reversed the trial court. The Supreme Court reversed the Appellate Court to have the trial court conduct a hearing under those facts to see if the foster parent could file suit as next friend of the child because the trial court had failed to determine if exceptional circumstances existed to warrant the foster parent to sue on the child's behalf. <u>Id.</u> at 467. This rule is consistent with other Supreme Court precedent. "Under our practice no previous appointment by the court is required, and the *prochein ami* named in the writ is permitted to appear and prosecute in the infant's name, though if he is not a proper person or fails to properly discharge his duties, the court may remove him and appoint another person in his place." <u>McCarrick v. Kealy</u>, 70 Conn. 642, 646 (1898). Hence, DCF misstated the rule of this case and the proposition it claimed the case stood for was inaccurate. Nonetheless, our case is distinguishable from <u>Orsi</u> because the mother in our case, initially brought this action on behalf of her minor child and has requested that the

Court appoint a guardian ad litem to fully protect the interest of the minor child, moved for the dismissal of her, the mother's, individual claims and moved to have the guardian ad litem continue the action, in her stead, as the next friend.

IV.  **The Participation and Appointment of the Guardian Ad Litem by This Court Is Necessary, Appropriate and Within This Court's Discretion and Jurisdiction.**

The Second Circuit Court of Appeals has applied F.R.C.P. 17(c) to allow a next friend or guardian ad litem to prosecute an action on behalf of a child in lieu of her general representative when the representative's own interests conflict with the person represented, thus allowing the infant to sue in federal court by a guardian ad litem. Ad Hoc. Comm. Of Concerned Teachers v. #11 Greenburgh Free School Dist., 873 2d 25, 29 (1989).

In our case, the Court has previously appointed Attorney Lynn Jenkins to act in this capacity for the child victim. The mother as indicated in her affidavit had brought this action only for the benefit of her daughter and not herself. The mother has withdrawn any and all counts relating to her entitlement for damages. (See Affidavit attached to plaintiff's objection to intervene dated August 21, 2003.) As the Court will see, Attorney Lynn Jenkins is well qualified and has handled numerous cases in Federal and State Courts successfully protecting the interests of minor children. (See Exhibit I, the attached resume of Atty. Jenkins.)

For the foregoing reasons as detailed in this memorandum of law, we respectfully request that the Motion by the Proposed Intervener be denied in its entirety and that the Court re-appoint Atty. Jenkins as the guardian ad litem of the minor child.

Respectfully submitted,

Attorney Gerald L. Harmon

By: _____
Gerald L. Harmon (ct 13523)
290 Pratt Street
Meriden, CT 06450
(203) 639-1956

## CERTIFICATION

I hereby certify that copies of the foregoing plaintiff's response to post hearing memorandum of proposed intervenor were mailed to the following parties of record on January 28, 2004 as follows:

Elliot B. Spector, Esq.
Sack, Spector and Karsten
836 Farmington Avenue
West Hartford, CT 06119

Susan T. Pearlman Esq.
110 Sherman Street
Hartford, CT 06105

District Court Clerk's Office
915 Lafayette Blvd
Bridgeport, CT 06604

Judge Stefan R. Underhill
Chambers
915 Lafayette Blvd
Bridgeport, CT 06604

Attorney Michael S. Hillis
Dobrowski, Knapsack and Hillis, LLC
205 Whitney Avenue
New Haven, Ct 06511

Attorney Andrew Bowman
1804 Post Road East
Westport, CT 06880

Attorney Erskine D. McIntosh
The Law Offices of Erskine D. McIntosh
3129 Whitney Avenue 2nd Floor
Hamden, Ct 06518

Attorney Michael W. Mackniak
87 Meadow Street
Naugatuck, 06770

_____
Gerald L. Harmon, Esq.

19 Objection-Post Hearing Memo of Law-Giordano

EX. A

# Lynn Jenkins, Esq.

Post Office Box 59, New Haven, Conn. 06501-0059
Office Telephone Number: 203.624.2644
Fax Telephone Number: 203.624.7390
E-Mail at lojenkins@aol.com
URL Address: http://homepage.mac.com/lynn_jenkins/index.html

---

The Law Office of Lynn Jenkins, Esq. provides *superior* legal services to individuals, small companies, and governmental agencies in the greater New Haven area. The goal of the office is to improve the responsiveness of governmental agencies to Connecticut citizens. *More about Lynn Jenkins, Esq.* (Adobe Reader Required.)

Attorney Jenkins is a long-term Connecticut citizen. Her interests are Shakespeare, Macintosh computers, and English history. She is committed to the welfare of Connecticut children.

Her representation includes a substantial practice in the probate courts. The following trusts and estates are presently open with her office and are pending in the New Haven Court of Probate (Keyes, J.). Each case involves a lost minor, heir, or beneficiary. Unless indicated, these trusts and estates are solvent and may involve actions on the corporate surety bond.

If you have any information, please contact Attorney Jenkins at 203.624.2644. Her office welcomes email at lojenkins@aol.com.

MISSING!
*In Re Edward Assunto Estate.* The decedent, Edward Assunto, was born on April 16, 1903 in Stamford, Connecticut and died on January 17, 2002 in New Haven, Connecticut. He was married to Carmela LaFemina, who predeceased him. He left a last will and testament dated November 3, 1995. Unknown and/or undetermined heirs at law are sought.

HEIRS SOUGHT!
*In Re Joshua Brown Estate.* The heirs of Joshua Brown are sought for distribution of insurance funds. Joshua Brown was born on September 20, 1983 and died on August 3, 2003 in New Haven, Connecticut. His parents were Moses Edwards and Eula Mae Brown (both deceased). The whole-siblings and half-siblings of Joshua Brown should inform the New Haven Court of Probate of their whereabouts.

INFORMATION URGENTLY SOUGHT! MINOR HAS REACHED MAJORITY!
*In The Matter Of Keri Marie Carlson, A Minor Child.* The minor child was born on October 4, 1985. The former guardian of her trust was Bella Carlson. The last known address is New Haven, Connecticut. Information about the whereabouts of the former guardian as well as the (former) minor child is sought.

**FOUND!**
<u>In The Matter Of Jessica Carter, A Minor Child.</u> The minor child was born on October 17, 1987. The former guardian of her trust was Jerri Barber. The last known address is Roanoke, Virginia. Information about the whereabouts of the former guardian is sought.

**INFORMATION SOUGHT!**
<u>In The Matter Of David Carter, A Minor Child.</u> The minor child was born on June 25, 1985. The former guardian of his trust was Charlease Carter. The last known address is New Haven, Connecticut. Information about the whereabouts of the former guardian is sought.

**HEIRS SOUGHT!**
<u>In Re John Caso Estate.</u> The decedent, John Caso, was born on January 27, 1924 in New Haven, Connecticut. He left a Last Will and Testament dated August 19, 1999. Unknown and/or undetermined heirs at law are sought.

**INFORMATION SOUGHT!**
<u>In Re Bernard M. Cooper.</u> In this trust file, the whereabouts of Alan S. Cooper, formerly of 2451 Still Forest Road, Brooklandville, Maryland, and of Rita Kuperman, formerly of 1033 Whalley Avenue, New Haven, Connecticut, are sought.

**HEIRS SOUGHT!**
<u>In Re Louis Corso Estate.</u> The decedent, Louis Corso, was born on December 12, 1917 in New Haven, Connecticut. Unknown and/or undetermined heirs at law are sought and are related to Nicholas Corso of East Haven, Connecticut.

**HEIRS SOUGHT!**
<u>In Re Louise DeRosa Estate.</u> The decedent, Louisa DeRosa, was born on January 6, 1905 in New Haven, Connecticut. She is related to Anna O'Connor of New Haven, Connecticut, Arnold Stanio of East Haven, Connecticut, and Madeline Martin of Hamden, Connecticut. Unknown and/or undetermined heirs at law are sought.

**HEIRS SOUGHT!**
<u>In Re Ralph L. Mansfield, Jr. Estate.</u> The decedent, Ralph L. Mansfield, Jr., was born on October 31, 1929 in New Haven, Connecticut. His mother was Katherine Crowley. He left a Last Will and Testament dated April 27, 1998. Unknown and/or undetermined heirs at law are sought.

**HEIRS SOUGHT!**
<u>In Re Louis Rosarbo Estate.</u> The decedent, Louis Resarbo, was born on April 29, 1924 in New Haven, Connecticut. His paents were Vincent Rosarbo and Carmela Bonito (both deceased). He left a Last Will and Testament dated July 26, 1993. Unknown and/or undetermined heirs at law are sought.

**HEIRS AND MINORS SOUGHT!**
<u>In Re Glenn Semyrao Estate.</u> The decedent, Glenn Semyrao, was born on January 1, 1954 in New Haven, Connecticut. He did not leave a will. Unknown and/or undetermined heirs at

FROM : LYNN JENKINS, ESQ.  Case 3:03-cv-00571-SRU  Document 28  Filed 02/02/2004  Page 11 of 18  FAX NO. : 203 624-7390  DEC. 22 2003 02:36PM  P4

Law Office of Lynn Jenkins, Esq.

12/22/03 2:03 PM

law are sought as well as any information regarding the whereabouts of any minor heirs to the estate.

### SOUGHT!
<u>In Re Stefanie Scheff</u>. The probate court is interested in locating the whereabouts of William Scheff, formerly of 19 Willard Street, New Haven, Connecticut. William Scheff was the guardian for trust funds for Stefanie Scheff, formerly a minor child. Stefanie Scheff was born on February 19, 1984. Her mother is Susan Scheff, formerly of 501 Hill Street, Hamden, Connecticut.

### FOUND!
<u>In Re Martha Waller Estate</u>. The probate court is interested in locating Spencer Douglas Floyd, Jr., who is an heir to this estate. Spencer Douglas Floyd, Jr. is the son of the decedent. His last known address is the Bronx, New York. He has familial ties to California. MONIES ARE BEING HELD IN TRUST FOR SPENCER DOUGLAS FLOYD, JR.

### FOUND!
<u>In Re Minas Basil Yordanidis Estate</u>. The probate court is interested in locating the heirs of Minas Basil Yordanidis. The decedent was born in Istanbul, Turkey on January 1, 1923 and died in New Haven, Connecticut on February 8, 2000. The decedent was a retired architect and resided at 625 Orange Street, New Haven, Connecticut. Unknown and/or undetermined heirs at law are sought.

---

This site was updated on December 7, 2003 and is updated as new estates are assigned.

---

FROM : LYNN JENKINS, ESQ.        FAX NO. : 203 624-7390        Dec. 22 2003 02:37PM P5

# Curriculum Vitae

## Contact Information
post office box 59 • new haven, connecticut 06501
telephone: 203.624.2644 • fax: 203.624.7390 • cell: 203.675.1378
lynn_jenkins@mac.com • homepage.mac.com/lynn_jenkins

## Career Objectives
*to provide superior legal services to individuals in New Haven, and to improve the responsiveness of government to its citizens, especially the children of Connecticut.*

## Education & Credentials
BOSTON UNIVERSITY SCHOOL OF LAW
J.D. MAY 1981
American Jurisprudence Award
Director, Moot Court Program
Community Service Award
Faculty Award

BOSTON UNIVERSITY COLLEGE OF LIBERAL ARTS
B.A. MAY 1978
Summa Cum Laude
Graduated with Distinction in Sociology
*Phi Beta Kappa* (Junior Year)

STATE & FEDERAL BAR ADMISSIONS
Member of the Connecticut Bar (11/81)
Member of the United States District Court Bar (1/82)
Member of the United States Claims Court Bar (4/83)
Member of the United States Court of Appeals Bar (4/96)
Member of the United States Supreme Court Bar (8/96)

PROFESSIONAL ACTIVITIES & AWARDS
Executive Board for New Haven Legal Assistance Association, Inc.; Yale University TRO Program; Greater New Haven Business and Professional Association; Elm City Business Award; Connecticut Bar Association and New Haven County Bar Association.

*Lynn Jenkins, Esq.*

ACKNOWLEDGMENTS & APPRECIATION
Naugatuck Valley Community College; New Haven Public School Volunteers; Newington Children's Hospital; New Haven Task Force on Sexually Abused Children; and numerous letters, cards, and tokens of gratitude.

## *Continuing Education*

Classes at Gateway Community College in computer science, writing, and personal development. Several online courses including the Kaplan Grammar and Writing Review, the CoffeeHouse Seminar for Writers, and Dr. Joe Burns' Tutorials on HTML and JavaScript. Matriculation at the Wesleyan Writers Conference (Summer 2002). Independent study in computers, computer operating systems, computer programming, web design and production, internet e-commerce, and computer applications. Independent study in creative writing, fiction and non-fiction publication.

Web mistress for several websites including: *Roger Howarth Fan Site* (cyber doors closed); *Re-elect Esther Armmand* (cyber doors closed); *The Tony Karajanis Collection* (in development stage); *Connecticut Injury Law* (in revision stage); *Buffy and Angel Emporium* (current html learning site); *Home Page of the Law Office of Lynn Jenkins, Esq.* (current professional site); and *Lynn Jae Marsh — OnLine* (monthly ezine site).

*proud owner of these web sites:*
www.lynnjaemarsh.com
homepage.mac.com/lynn_jenkins
members.aol.com/mstress001/index.html

*proud member of these web organizations:*
Simply the Best Ezines on the Web
Banner Exchange for Ezines
Amazon Honor System

*proud member of these writing groups:*
Black Writers Alliance
CH Select2 Critique Group
Writers Exchange and Critique Group
Romance Writers Club

*highlights of writing career:*
Lynn Jae Marsh — OnLine
Romantic Days, Romantic Nights
Copyright Law: Everyday Application for Writers
Gwendolyn Brooks Poetry Contest Winner
Two-Fifths (Historical Novel In Progress)
County Kids (Article—November 2002)



## Professional Statement & Information

Private practice since 1983. Since graduation from law school, employment has included New Haven Legal Assistance Association, Inc., Housing Authority of the City of New Haven, and various governmental agencies.

Past legal experience includes court appearances, filing and arguing motions, preparing pleadings, all aspects of discovery, extensive research, drafting briefs and memoranda, and substantial trial experience. Class action experience, personal injury negotiation, settlement and litigation, appellate arguments and federal litigation experience. Capable of controlling a large caseload and processing volume litigation effectively.

Present practice is of a general nature with an emphasis on domestic relations (including the representation of children and adult litigants in paternity actions), criminal defense, representation of children, civil rights and employment litigation, landlord-tenant and municipal law.

## Significant Trial Litigation

Priscilla Pitts v. Delores McNair (1982). Docket No. 21-87-13; Dorsey, J. Representation of defendant in an assault and battery action. Jury verdict for the plaintiff of $165,000.00 in damages. Punitive damages also awarded.

N.H. Housing Authority v. Emma Goins (1983). Representation of the agency on jurisdictional motions in serious nuisance action, including the filing of an extensive legal brief on the issue of abolishment of trial by jury in summary process actions and constitutionality of said abolishment.

Njuguna v. N.H. Housing Authority (1983-1987). Representation of the agency in this much litigated, much publicized whistler-blower action. After trial on the requested temporary injunction, a Rule 41 dismissal was entered at the federal level. Subsequently, in the state courts, judgment for the agency was entered.

N.H. Housing Authority v. Barbara Robinson (1984-1986). Representation of the agency in summary process action for the enforcement of no-pets policy. This action was one of several brought by the agency to enforce all lease provisions. See also New Haven Housing Authority v. Stanley Sheets (1984).

N.H. Housing Authority v. Comm. on Equal Employment (1985-1988). Several actions against or involving the state Freedom of Information Commission or the municipal Equal Employment Opportunity Commission concerning the denial of access to files and investigatory documentation.

N.H. Housing Authority v. Collins (1985). Successful defense of pre-trial motions (including jurisdictional motions) in summary process action for serious nuisance, resulting in the eviction of persons charged with the operation of a drug factory on agency property.



Sam Jones v. N.H. Housing Authority (1985). Employment action involving the termination of long-time employee. Representation included defense of claim for unemployment compensation benefits on termination.

State v. Robert Greene (1985). Docket No. CR5-68103; Gray, J. Representation of defendant charged with robbery (first degree), carrying a dangerous weapon and other felonies. Obtained youthful defender status for defendant. Sentenced to three years suspended after nine months.

Alvin Lewis v. N.H. Housing Authority (1986). Hearings before the municipal Equal Employment Opportunity Commission on claims of discriminatory discharge and jurisdictional issues. Settlement during administrative process.

N.H. Housing Authority v. Fair Haven Elderly Association (1986). Litigation involving a jointly-undertaken housing project with issues including the legality of the contract and the violation of the Connecticut Unfair Trade Practices Act.

N.H. Housing Authority v. Golden State Brickface (1986). Summary process action and contract action for back rent and damages regarding leased commercial property, which entailed a successful settlement for the agency.

State v. Darryl Huckabee (1988). Docket No. 88-03-106; Downey, J. Representation of youth charged with murder. Plea bargained to manslaughter.

Utica Mutual Insurance Company v. N.H. Housing Authority (1989). Representation of the agency in action involving bidding procedures for workers' compensation contract. Settlement, after extensive pre-trial hearings and proceedings, during trial.

N.H. Housing Authority v. Gloria Bell (1990). Representation of the agency in a frequently cited case for the definition of serious nuisance in the summary process context. After trial, judgment for the agency was entered in this landmark case.

N.H. Housing Authority v. John Kopchick (1992). Eviction action for nuisance. Tenant evicted after numerous hearings and defense of pre-trial motions in this hotly contested case. Extensive involvement of tenants was sought and obtained.

N.H. Housing Authority v. Charles Dawkins (1992). An important action because of its possible effect on Section 8 contract interpretation and enforcement. After trial, judgment for the agency.

Milton Jackson v. N.H. Housing Authority (1992). Administrative hearings concerning former employee for termination and receipt of unemployment compensation benefits. Successful defense of all claims, with judgment in favor of the agency, including before the Connecticut Board of Review.



<u>N.H. Housing Authority v. Charlestine Young</u> (1995). Representation of the agency in complex eviction action. Issues included subject-matter jurisdiction and compliance with state and federal statutory and regulatory law.

<u>Probate Trust Files</u> (1998). Twelve cases assigned by Judge John A. Keyes of the New Haven Court of Probate involving locating missing trustees who misappropriated the trust funds of minor children. Some of the cases involved commencing suit on the bond; others involving malpractice actions against the attorneys for the trustees. All cases involved extensive trial negotiation and trial preparation.

<u>Laspina-Roe v. Williams-Doe</u> (1999). Landmark case involving interpretation of the Connecticut co-guardianship statute and its application to co-parenting by lesbian mothers. The decision at the trial level revisited how the courts view standing and visitation by third-parties who have no blood relationship to children but who have developed significant emotional ties to them.

<u>Jessica Carter v. SunTrust Banks, Inc.</u> (2000). Representation of minor child in action against seventh largest banking corporation in the United States. Litigation recently instituted and a ground-breaking jurisdictional decision expected. Expansion of the case to a class action under CUTPA under review.

## *Significant Appellate Litigation*
<u>Bell v. Allstate Insurance Company</u>, 38 Conn. Supp. 480 (1982).

<u>Russell v. State of Connecticut</u>, 23 Conn. App. 812 (1990).

<u>In Re Megan M.</u>, 24 Conn. App. 338 (1991).

<u>In Re Shana M.</u>, 26 Conn. App. 414 (1992).

<u>City of New Haven v. Miley</u>, 34 Conn. App. 634 (1994).

<u>Wilson v. Wilson</u>, 38 Conn. App. 263 (1995).

## *Significant Civil Rights Actions*
<u>Sarah Egeler v. N.H. Housing Authority</u> (1983). Private settlement in United States District Court for the District of Connecticut.

<u>Jacqueline Douglas v. N.H. Housing Authority</u> (1985). In handicap discrimination action, issue was whether the agency provided reasonable accommodation to wheelchair tenant, who alleged unsafe living conditions and the inadequate provision of housing services.

5



Tracy Jones v. N.H. Housing Authority (1995). In this ESDA case, the agency prevailed, after two (2) appeals to the Board of Review, on employee's claim of constructive discharge and intentional infliction of emotional distress.

Best v. United States Government (1996). Pending litigation in United States District Court for the District of Connecticut involving extensive personal injury damages and pendent state-law claims. Action was tried to a hung jury on the Title VII claim. Significant settlement obtained thereafter.

## Significant Actions Involving Children

In Re Jamar and Damien S. (1986; New Haven Juvenile Court). Representation of two siblings in a variety of child protection and delinquency actions. These two boys came from a dysfunctional family (including an absentee father) and their mother, guardian, and caretaker all died of AIDS-related diseases or drug-related diseases. In addition to being born in poverty, both minor children lacked parental supervision, guidance, and direction and were out-of-control. Both also suffered from emotional problems and educational neglect. After much hard work, both minor children were placed in residential group homes and they did as well as can be expected given their prior social, educational, and moral deprivations.

In Re Dawn M. (1988; New Haven Court of Probate). Representation of the minor child for the purpose of filing temporary custody and removal petitions. Through psychological evidence, the minor child was permanently removed from her biological mother (her father could not be determined) and placed with a non-blood, non-familial caretaker. This case involved issues of substance abuse, prostitution, sexual deviancy, and criminal activity.

In Re Tyrmarrka B. (1989; New Haven Superior Court). Representation of the minor child in a surety action. On the behalf of the minor child, the bonding company was sued for money damages where the minor child's mother had absconded with the minor child and with the funds being held in trust for him. After extensive litigation, a settlement was negotiated whereby the surety would pay on the bond and the funds would be placed in a restricted account until the minor child was located or reached the age of twenty-five. The minor child was subsequently located and the funds turned over to him.

In Re Ryan E. (1991; New Haven Superior Court). Representation of the minor child in a heated custody case. In this action, two judges recused themselves, due, in part, to the nature of the father's sexual perversion. Several lawyers also withdrew, in part, for this reason. Representation of the minor child to the conclusion of the action despite great stress and financial hardship. This case involved thirty court appearances and at least ten full days of trial.

In Re Conroy Children (1992; New Haven Superior Court). Representation of a blind, medically-impaired minor child and his two older siblings in a post-dissolution custody case. This case involved a spectrum of social problems, including substance abuse,



domestic violence, juvenile delinquency, and parental neglect. At the conclusion of the case, Judge Sidney Axelrod ordered the monitoring of the custody arrangements to ensure compliance with the recommendations of the Family Relations Office.

In Re Clifton B. (1993; New Haven Court of Probate). Representation of the minor child who was without a guardian of his person as both parents were removed in 1990 and the temporary guardian died of an AIDS-related disease. Placement resources were investigated and a guardianship petition was prepared and presented. After trial, the minor child was placed with non-blood, non-familial guardians. This case also presented a risk of personal injury in the implementation of the removal order.

In Re Sherfield Children (1994; New Haven Court of Probate). Representation of two minor children whose father murdered their mother and then committed suicide. This was a heated custody case between the maternal grandmother and the paternal grandparents. It involved long-term planning and ensuring that the minor children received the psychological care and treatment patently required. It also involved handling the considerable finances of the estates. The minor children were placed with the paternal grandparents subject to liberal visitation in the maternal grandmother.

In Re Alford-Williams. (1996; New Haven Court of Probate). Representation of two minor children in a guardianship action where the Connecticut Department of Children and Families (DCF) refused to act upon a permanency plan for the minors. The proposed guardian, who was the maternal grandmother, was suspected — although there was no conclusive proof — of murdering her minor son thirty years previously. Psychological evidence indicated that the minor children needed a stable home-life in order to thrive and their placement with the maternal grandmother, under protective supervision, was achieved.

In Re Baby Girl B. (1999). Hotly contested neglect action in which the rights of an infant girl clashed with the religious beliefs of her parents. The parents were devout Jehovah's Witnesses who opposed medical treatment (blood transfusions) on spiritual grounds. The minor was a premature infant whose life was in danger because of her parents' beliefs. With all parties working together, a delicate balance was reached — without the intrusive and hurtful filing of a neglect petition in juvenile court.

In Re Seth Allen P. (2002). A seven-year battle for the adoption of a minor child by extended relatives. The child's biological mother was emotional disturbed and dangerous to both herself and the child. She was subsequently committed to the care of the State of Connecticut when she attempted to murder her mother. The child's father was a drug dealer and loosely affiliated with the Latin Kings. He was killed, before the minor child was born, in a drug-related shooting. The adoption of this child by suitable and worthy people was stalled by the age of the mother and the court's determination to protect her rights as a minor-mother as well as by the fact that the minor-mother claimed Native American heritage.

