UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE, SR., IND. & PPA<br>JANE DOE, JR.,<br>　　Plaintiffs, | :<br>:<br>:<br>: | |
| v. | : | No. 3:01 CV 2298 (SRU) |
| | : | |
| CITY OF WATERBURY, GUINTANA<br>JONES, and PHILIP GIORDANO,<br>　　Defendants. | :<br>:<br>:<br>: | |
| SUSAN ROE, JR. and<br>SUSAN ROE, SR., PPA<br>　　Plaintiffs, | :<br>:<br>:<br>: | |
| v. | : | No. 3:03 CV 571 (SRU) |
| | : | |
| CITY OF WATERBURY and PHILIP<br>GIORDANO,<br>　　Defendants. | :<br>:<br>: | |

## **RULING ON MOTIONS TO INTERVENE AND BE SUBSTITUTED**

　　Darlene Dunbar, Commissioner (the "Commissioner") of the Department of Children and Families ("DCF") seeks to intervene and be substituted for Jane Doe, Sr. and Susan Roe, Sr., pursuant to Rules 24 and 17 of the Federal Rules of Civil Procedure.[1]  Jane Doe, Sr. and Susan Roe, Sr. initially filed separate suits on behalf of their respective minor children, Jane Doe, Jr. and Susan Roe. Jr.; Jane Doe, Sr. also sued individually.  Jane Doe, Sr. filed her complaint on December 7, 2001; Susan Roe, Sr. filed her complaint on March 31, 2003.  The two lawsuits have been consolidated.  Susan Roe, Sr. withdrew from the action as next friend after petitioning the court to appoint a guardian ad litem.  This court granted the unopposed motion to appoint

---

[1] The Commissioner initially also invoked Federal Rule of Civil Procedure 25 and Connecticut Practice Book § 9-18, but acknowledged in her October 2, 2003 Reply Brief (doc. # 47) that neither provision is applicable to the present motion.

Attorney Lynn Jenkins as guardian ad litem for Susan Roe, Jr. on October 1, 2003. The Commissioner, who had been appointed legal guardian of Jane Doe, Jr. and Susan Roe, Jr. on October 29, 2002, became aware of the lawsuits and filed a motion for reconsideration of the appointment of the guardian ad litem on October 15, 2003. That motion was granted pursuant to an oral order issued on December 22, 2003. The Commissioner alleges that she is the general guardian of both minor children, and therefore is their legal representative for purposes of this civil action. Plaintiffs object to the Commissioner's motions. For the following reasons, the Commissioner's motions to intervene and be substituted are DENIED.

### *Intervention under Rule 24*

To intervene as a matter of right under Rule 24(a)(2), the proposed intervenor must meet the following requirements: "(1) the motion to intervene must be timely filed; (2) the party must demonstrate an interest in the property or transaction which is the subject of the underlying action; (3) the party must show that a prejudice to that interest will result if intervention is not permitted; and (4) the applicant's interest must not be adequately protected by any of the existing parties." Security Pacific Mortg. and Real Estate Services, Inc. v. Republic of the Philippines, 962 F.2d 204, 208 (2d Cir. 1992). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." Id. Permissive intervention under Rule 24(b)(2) requires timeliness, a common question of law or fact between the intervenor's claim or defense and the underlying action, and a showing that such intervention will not cause undue prejudice or delay to existing parties with respect to the main action. Mrs. W. v. Torozzi, 124 F.R.D. 42, 46 (D. Conn. 1989).

*1.     Timeliness*

Timeliness under Rule 24 is determined in the context of surrounding circumstances. NAACP v. New York, 413 U.S. 345, 366 (1973). The Commissioner asserts that, because the DCF was not notified of the pending litigation by plaintiffs' counsel, and became aware of these cases only after news coverage in March 2003, any filing delay is attributable to plaintiffs' counsel. Counsel for the Jane Doe plaintiffs respond that the Commissioner was serving merely as custodian to the minor children when this suit was filed in December 2001, thus counsel was not obligated to provide notice to the Commissioner at that time.

Timeliness in filing for intervention does not follow a bright-line rule. Circumstances generally relevant to evaluating timeliness are "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." United States. v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). Because of the Commissioner's late appointment as guardian and the delays in the Commissioner's notice about the litigation, the Commissioner's application will not be rejected as untimely.

*2.     Interest in underlying litigation*

The Commissioner's interest in the present proceedings is not entirely clear. On October 29, 2002, the Commissioner was appointed legal guardian of the minor children, Jane Doe, Jr. and Susan Roe, Jr., by the Superior Court for Juvenile Matters in Waterbury. As such, the Commissioner was then charged with "(A) the obligation of care and control; (B) the authority to

make major decisions affecting the minor's education and welfare . . . ." Conn. Gen. Stat. § 45a-604.

This litigation will not affect the children's care or custody, neither will it directly affect their well being, education, or any major life decision. Thus, it is not apparent that pursuit of this litigation falls within the Commissioner's statutory authority as guardian. Under Connecticut General Statutes § 45a-604(5):

> (5) "Guardianship" means guardianship of the person of a minor, and includes: (A) The obligation of care and control; (B) the authority to make major decisions affecting the minor's education and welfare, including, but not limited to, consent determinations regarding marriage, enlistment in the armed forces and major medical, psychiatric or surgical treatment; and (C) upon the death of the minor, the authority to make decisions concerning funeral arrangements and the disposition of the body of the minor[.]

Under the statute, a minor's guardian has authority to make major life decisions concerning issues such as marriage, military service, and significant medical treatment. Although Connecticut General Statutes § 45a-604(5) notes that it does not describe the universe of child "welfare," none of the examples listed suggests a role for the guardian in pursuing tort litigation. Even when referring to the death of a child in item (C), an event that often leads to litigation, there is no mention of legal representation or involvement. Furthermore, if pursuing tort litigation can be justified as affecting a child's welfare, the distinction recognized in Connecticut law between guardianship of the person and guardianship of the estate, as more fully discussed below, would become blurred.

Moreover, although the Commissioner is charged, as guardian, with protection of the welfare of Jane Doe, Jr. and Susan Roe, Jr., the mandate of the DCF does not necessarily encompass undertaking litigation on behalf of its charges. DCF's master plan is set forth at

-4-

Connecticut General Statutes § 17a-3 in the following terms:

> The department shall plan, create, develop, operate or arrange for, administer and evaluate a comprehensive and integrated state-wide program of services, including preventive services, for children and youth whose behavior does not conform to the law or to acceptable community standards, or who are mentally ill, including deaf and hearing impaired children and youth who are mentally ill, emotionally disturbed, substance abusers, delinquent, abused, neglected or uncared for, including all children and youth who are or may be committed to it by any court, and all children and youth voluntarily admitted to the department for services of any kind.

A mandate to create, develop and implement "services, including preventative services" does not suggest a duty to undertake litigation such as this, which is not directly related to the children's welfare.

At most, the Commissioner has an interest in this litigation only indirectly, i.e., to the extent that obtaining a money judgment might improve the welfare of the children.

3.    *Prejudice to the Commissioner's Interest*

For purposes of Rule 24(a)(2) intervention, the Commissioner must show that prejudice to her interest in the litigation will result, absent intervention. The Commissioner notes that she has an interest in "safeguarding the children for whom she is the guardian and . . . that interest may well be impaired if their mothers are permitted to act as their legal representatives." (doc # 46 at 3). The Commissioner expresses concern that "the course of litigation, including any settlement discussions, are fully under [Jane Doe, Sr. and Susan Roe, Sr.'s] control." At bottom, the Commissioner's concern seems to be that the mothers will wrongfully obtain or misuse any recovery from this case. This concern is misplaced. A parent of a minor "shall not receive or use any property belonging to the minor in an amount exceeding ten thousand dollars in value unless

appointed guardian of the estate of the minor." Conn. Gen. Stat. § 45a-631; see also Ryle v. Reedy, 99 Conn. 174, 179 (Conn. 1923) (mother prohibited from receiving or using property of minor until appointed guardian of the estate). Thus, the Commissioner has failed to make a sufficient showing of prejudice to support intervention as a matter of right pursuant to Rule 24(a)(2).

For purposes of permissive intervention, the proposed intervenor must demonstrate that intervention will not cause undue prejudice or delay. Although the thrust of this inquiry hinges on prejudice, another factor relevant to this evaluation includes "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978) (citing Spangler v. Pasadena City Board of Education, 552 F.2d 1326, 1329 (9th Cir. 1977)). Although no prejudice or delay would likely result from the Commissioner's intervention, in light of recent and highly publicized deficiencies of the DCF and the demonstrated experience of plaintiffs' counsel and their proposed guardian ad litem, it is not apparent that the Commissioner's intervention will enhance the development of the facts or the appropriate adjudication of the case. This inquiry amounts to an examination of the relative abilities of the respective attorneys to fully represent the interests of the minors, and will be addressed in the next section.

4.  *Interests not otherwise sufficiently represented*

Parties pursuing intervention as a matter of right must also demonstrate that the applicant's interests cannot otherwise be adequately represented. Whatever interest the

Commissioner has in pursuing this litigation is identical to the interests of the present plaintiffs – both seek to maximize the children's financial recovery.  In other words, evaluating this factor requires an inquiry into the best interests of the children.  In the context of this case, the interests of the children will be best protected by the party and the lawyers who will maximize the potential recovery on these claims.[2]

It is not apparent that the Commissioner's chosen counsel, the Connecticut Attorney General's Office, is any more qualified or better able to prosecute this case than are the plaintiffs' counsel: Michael W. Mackniak and Michael Stanton Hillis, representing Jane Doe, Jr. and Jane Doe, Sr., and Gerald Lewis Harmon and Erskine D. McIntosh, representing Susan Roe, Jr.  Despite my request that she do so, the Commissioner has not provided substantiation of the Attorney General's relevant experience and success recovering for plaintiffs in civil actions.  Several of the plaintiffs' attorneys have appeared before me and are known to be competent and experienced civil litigators.  In Sciongay v. Town of Weston, et al., Docket No. CV-98-0064039-S, for example, Michael Hillis won a three-million-dollar jury verdict.  The case dealt with causation, pre-existing injury and medical treatment.  Furthermore, Lynn Jenkins, plaintiffs' proposed guardian ad litem, has extensive experience in a broad range of litigation matters, including representation of minors.

In part because plaintiffs' counsel will collect fees and costs from any plaintiffs' verdict, present counsel have exhibited adequate motivation to conduct effective litigation and argue all

---

[2] Both plaintiffs and the Commissioner accuse the other of conflicts of interest.  A conflict of interest would doubtless disable a lawyer or party from adequately representing the interests of the minor children.  No claim of conflict of interest raised in this case, however, has any merit.  Accordingly, those claims have not affected my ruling on the present motions.

relevant legal claims on behalf of their clients.  See Mrs. W. v. Tirozzi, 124 F.R.D. 42, 45 (D. Conn. 1989).  Although private counsel will deduct fees from plaintiffs' awards, their experience enhances the likelihood of a plaintiffs' verdict and, in particular, a sizable plaintiffs' verdict.  *Most* of a large sum of money is likely to be greater than *all* of a modest sum of money, and much greater than a verdict for the defense.  Thus, it appears that plaintiffs' counsel will best represent the interests of the minor children.  Ultimately, the decision to grant permissive intervention is within the court's discretion under Rule 24(b)(2).  I decline to exercise that discretion to permit intervention by the Commissioner.

*Substitution under Rule 17*

Rule 17(a) mandates that actions be prosecuted in the name of the "real party in interest."  Substitution is appropriate to fulfill this condition.  Subject to Rule 17(c), this court has authority to "appoint a guardian ad litem for an infant . . . not otherwise represented in an action or [to] make such other order as it deems proper for the protection of the infant . . . ."  This court initially appointed Attorney Lynn Jenkins to serve as guardian ad litem for Susan Roe, Jr., but that appointment was subject to reconsideration on December 22, 2003.  Plaintiffs seek reappointment of Attorney Jenkins as guardian ad litem, while the Commissioner seeks to be substituted for Jane Doe, Sr. and Susan Roe, Sr.

Although the Commissioner has been appointed the guardian of the minor plaintiffs, it does not appear that the Commissioner represents the estate of either minor child.  Connecticut law recognizes a distinction between two types of guardianship.  Guardians of the estate have no right to control over "the person," and a guardian of the person does not become a guardian of

the estate except by appointment. Conn. Gen. Stat. § 45a-629(b). The Commissioner has only been appointed guardian of the person. The term "guardianship" generally refers to guardianship "of the person" under Connecticut statutory law. Connecticut General Statutes § 17a-93(d) expressly provides:

> (d) "Guardianship" means guardianship, unless otherwise specified, of the person of a minor and refers to the obligation of care and control, the right to custody and the duty and authority to make major decisions affecting such minor's welfare, including, but not limited to, consent determinations regarding marriage, enlistment in the armed forces and major medical, psychiatric or surgical treatment[.]

As noted previously, this mandate suggests no specific obligation or authority to undertake civil litigation unrelated to issues of care and control or major life decision of the minors.

The Commissioner notes that "[w]hen a guardian has been appointed to protect the interests of the child, the guardian is usually the proper person to bring an action on behalf of the child." In support of this proposition, the Commissioner cites two cases, Williams v. Cleaveland, 76 Conn. 426, 432 (Conn. 1904), and Orsi v. Senatore, 230 Conn. 459 (1994). In Williams v. Cleaveland, although the Connecticut Supreme Court noted that the "guardian is usually the proper person to bring an action on behalf of [a] child," it also concluded that:

> [T]here are frequently cases when the infant may properly sue by next friend, notwithstanding the existence of [a] guardian, as when the guardian is absent, or is unwilling or unable to institute or prosecute the required action or appeal, and especially when, though declining to take such action himself, he does not forbid such proceeding, or when he is disqualified by interest hostile to that of the infant, or is for other reasons an improper or unsuitable person to prosecute such actions in behalf of the ward. In such cases, and in the absence of any statute requiring infants to sue by probate guardian, there seems to be no good reason why actions and appeals may not at least be commenced by an infant by next friend.

Williams, 76 Conn. at 432.

The Williams court went on to affirm the holding of the lower court that a father, guardian of the person of a minor child, could not sue on behalf of the child when the guardian of the estate had refused to appeal the minor's case, contrary to the minor's wishes. In other words, the guardian of the person could not stand in as the guardian of the estate for purposes of litigation. The Commissioner's reliance on Orsi v. Senatore is also misguided. In Orsi, a foster parent sought to bring suit *after* the appointment of a guardian and a guardian ad litem. The trial court prohibited the suit, the appellate court reversed, and the Supreme Court of Connecticut reversed and remanded to determine whether exceptional circumstances existed to permit the foster parent's claim. Orsi, 230 Conn. at 461. The Commissioner now claims that, unless the plaintiffs' attorneys can cite to such exceptional circumstances, they cannot continue to represent the minor plaintiffs. However, Orsi does not support that proposition. The Orsi case involved a guardianship appointment that was in place prior to the initiation of the suit. In the present case, plaintiffs' counsel initiated suit prior to the guardianship appointment, so exceptional circumstances are not required.

Rule 17(c) also provides that the court may "make such other order as it deems proper for the protection of the infant . . . ." Plaintiffs' counsel note that although Rule 17(c) permits representation by a representative, it does not *require* substitution of a legal guardian once a lawsuit has already been filed by a suitable next friend. Nothing in Connecticut statutory or case law requires substitution in this case. In the absence of such substitution, however, and in light of the withdrawal of Susan Roe, Sr., Susan Roe, Jr. does need a guardian ad litem. Exercising discretion to make appropriate orders for the protection of minors, Attorney Lynn Jenkins is hereby reappointed as guardian ad litem for Susan Roe, Jr.

*<u>Conclusion</u>*

Because of plaintiffs' counsel's competence in the field of civil litigation, the limited mandate of the DCF, and the Commissioner's guardianship of the person rather than the estate, the court finds participation of the Commissioner in this litigation unnecessary to protect the minors' best interests. Accordingly, the Commissioner's motions to intervene and be substituted (doc. # 30) are DENIED. Furthermore, Attorney Lynn Jenkins is hereby reappointed as guardian ad litem to Susan Roe, Jr. for purposes of this litigation.

It is so ordered.

Dated at Bridgeport this 31st day of March 2004.

          /s/ Stefan R. Underhill
      Stefan R. Underhill
      United States District Judge