FILED

UNITED STATES DISTRICT COURT

2004 JUL 14  A 9: 38

DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
BRIDGEPORT, CONN

SUSAN ROE, JR.
    ppa LYNN JENKINS ESQ.
        Guardian Ad Litem

Plaintiff

CIVIL NO:3:03CV00571 (SRU)

CITY OF WATERBURY,
PHILIP GIORDANO
    In his capacity as MAYOR,
    CITY OF WATERBURY
PHILIP GIORDANO, individually
PHILIP GIORDANO
    Principal in the Law Offices
    Of PHILIP GIORDANO
    Defendants.

July 8, 2004

**PLAINTIFF'S OBJECTION TO DEFENDANT CITY OF WATERBURY'S MOTION
TO DISMISS DATED APRIL 25, 2003**

**LAW AND ARGUMENT**

**I.    STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should only be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hison v. Spalding, 407 U.S. 69, 73 (1984). "The function of a motion to dismiss is merely to assess the legal feasibility of a complaint, not to assess the weight of evidence which might be offered in support

thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 636, 639 (2d Cir. 1980).

Pursuant to a Rule 12(b)(6) analysis, the Court takes all well pleaded allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). See also Cooley v. Gibson, 255 U.S. 41, 45-46 (1957) (Federal Rules reject approach that pleading is a game of skill in which one misstep by counsel may be decisive of a case). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support (her) claims. United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990).

## II. THE FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT SUPPORT A CAUSE OF ACTION UNDER SECTION 1983

### A. Section 1983 Claim

Congress did intend municipalities (such as the City of Waterbury) and other local governmental units to be included among those persons to whom Section 1983 applies. Local governing bodies, therefore, can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer. Moreover, local governments, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels. Congress included customs and usages (in Section 1983) because of the persistent and widespread discriminatory practices of state officials

2

that could well be so permanent or well settled as to constitute a custom or usage. Monell v. Dept. of Social Services, 436 U.S. 658, 961 (1978).

Additionally, in Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), the Court held that a single decision by a municipal policymaker unquestionably constitutes an act of official government policy. Id. at 483.

The Supreme Court has generally articulated three requirements for stating a Section 1983 claim against a municipality for violations of Constitutional rights that have been met by the plaintiff. First, a plaintiff must identify a municipal policy or custom that has caused the violation of plaintiff's rights. See Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 387, 403, 117 S. CT 1382, 137 L.Ed.2d 626 (1997). A second closely related requirement is that such policy or custom must be executed by a municipal decision maker who has authority. See Pembuar v. City of Cincinnati, 475 U.S. 469, 481 (1986). Finally, the plaintiff must establish the state of mind required to prove the underlying violation. Bryan County, 520 U.S. at 405.

**B. Plaintiff's complaint alleges that Mayor Giordano, as the authorized decision maker, executed a policy or custom that caused the violations of her Constitutional rights.**

The plaintiff, as required by Section 1983, has properly alleged in her complaint that the execution of a municipal policy or custom led to the violation of her rights. As previously noted, this policy need not be officially promulgated by the municipality, and if it is made by a party that is authorized by the City, it surely represents an act of official government policy as that term is commonly understood. See Monell, 436 U.S. at 694.

As defendant claims, Section 1983 does not pose liability on a municipality unless deliberate action attributable to the municipality itself is the moving force behind the plaintiff's deprivation of federal rights. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct casual link between the municipal action or inaction and the deprivation of federal rights. See Board of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

However, defendant fails to note that the conclusion that the action taken or directed by the municipality or its authorized decision maker itself violates federal law will determine that the municipal action was the moving force behind the injury of which the plaintiff complains. Id. at 405.

Plaintiff's complaint properly alleges that Mayor Giordano was an official whose actions could fairly be said to represent official policy. The obvious fact that Giordano held the title and office of the Mayor of Waterbury and encompassed all of the powers and recognition bestowed with this title alone suggests that his actions represented official policy. As the Court has previously noted, "Surely the mayor is the one city official whose actions represent municipal policy. . ." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 448 (2d. Cir. 1983) ("[m]ayors may be treated as policymakers without proof of their specific powers and responsibilities"); See also Bartholomew v. Fischl, 782 F.2d 1148, 1153 (3rd. Cir. 1986).

In addition to the fact that Giordano held the office of Mayor, ¶ 13 of plaintiff's complaint alleges that "at all times relevant herein Mayor Giordano carried

4

a badge identifying him as the City of Waterbury Mayor, [and] he operated an unmarked police car owned by the City of Waterbury. . ." Furthermore, ¶ 12 of plaintiff's complaint states that the Mayor's alleged actions took place on property owned by the City of Waterbury and property owned by other high ranking Waterbury officials. Plaintiff also plans through discovery to show that Giordano had committed previous illegal actions that were reported to Police but were not acted upon that had a similar modus operandi. These facts would clearly suggest that Giordano had power, control and authority, thus the ability to present himself as the highest ranking official representative of the City of Waterbury. As a result, Mayor Giordano's actions could fairly be said to represent the City's policy as described by Monell, supra at 694.

The policy at issue here is Mayor Giordano's pattern of sexual abuse towards Jane Doe Jr. and the use of City of Waterbury property and cellular telephones to accomplish the same. Paragraph 19 of plaintiff's complaint states that "For an undetermined period of time commencing in approximately June of 1999 until July of 2001 Mayor Giordano did solicit acts from Jane Doe Jr." Plaintiff is entitled to prove the facts in her complaint that allege that Giordano had executed a policy or custom of sexual abuse.

As noted in Howard v. Town of Jonesville, 935 F. Supp. 855, 859-860 (W.D. Louisiana 1996), a mayor's actions may fairly be said to represent town policy when the policy involves sexual misconduct. In Howard, a § 1983 claim was successfully brought against the town for the mayor's alleged sexual harassment. Id. at 859. The essence of the complaint was the allegation that the plaintiff had been the

victim of sexual harassment and discrimination in the form of unwanted sexual advances, requests for sexual favors, and other verbal and physical conduct by the defendant Mayor. Id. at 858. The court denied the defendant's motion to dismiss and found that a reasonable trier of fact could find that the actions of the Mayor toward the plaintiff came to represent town policy or at least condoned a custom of sexual harassment. Id. In addition, a trier of fact could find that the Mayor's personal engagement in the allegedly unconstitutional treatment of the plaintiff satisfied Turner's second criteria for municipal liability. Id. See Turner v. Upton County, Tex., 915 F.2d 133, 136 (5th Cir. 1990) ("Two configurations can lead to a municipality's liability under § 1983 for the acts of its official. In the first . . . [the] municipality's final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees. In the second, the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved.") See also Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001) (Where the jury found that although there was no formal policy, the actions of the high ranking officials involved amounted to an unconstitutional policy as supported by evidence.)

The plaintiff has properly alleged that Mayor Giordano's actions represented City policy. This is because we are alleging that the Mayor had final policymaking authority in Waterbury. See e.g., Jet v. Dallas Independent School Dist., 491 U.S. 112, 123-125, 108 S. Ct. 915, 99 L.Ed.2d 107 (1998) (plurality opinion.) In addition,

whether the official has policymaking authority is a question of state law. See e.g., Pembaur, 475 U.S. at 483.

Under Connecticut state law, "[i]t has been well established that a city's charter is the origin of municipal powers. . . the charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised." Stamford Ridgeway Associates v. Board of Representatives, 214 Conn. 407, 423, 572 A.2d 951 (1990). The Waterbury City Charter outlines the mayor's authority as follows: The "mayor [is] the chief executive officer of the city [of Waterbury.]" WATERBURY CITY CHARTER, art. I., § 2101. It is the mayor's duty "[t]o cause the laws and ordinances [of the City of Waterbury] to be executed and enforced and to conserve peace within the city and be responsible for the good order and efficient government of the city." WATERBURY CITY CHARTER, art. I., § 2101(a). In times of emergency, it is the mayor's duty to "assume the entire control and direction of the police and fire forces of the city . . . and . . . execution of all of [their] powers. . ." WATERBURY CITY CHARTER, art. I., § 2102(a).

Mayor Giordano could not have executed a policy or custom of sexual abuse and use City of Waterbury property to accomplish the same without the broad authority that is granted by the City of Waterbury Charter. As a final policy maker, he was without question able to utilize the Mayor's office, Cell phones, City automobiles, other City officials' places of residence and his control over the police to accomplish the sexual abuse of the minor child without supervision, detection or consequence. The Mayor, as the "king of Waterbury," held great power over the

7

City's disenfranchised and poor minority citizens such as Jane Doe Jr., and he utilized this power to abuse her sexually.

### C. The City of Waterbury acted intentionally as required in a Section 1983 action.

As required under § 1983, the plaintiff has properly pled and will demonstrate that through the City of Waterbury's deliberate conduct, the municipality was the moving force behind the injury alleged. See Board of the County Comm'rs of Byran County v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382 (1997). The conclusion made by the trier of fact that the action taken or directed by the policymaker or its authorized decision maker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." Id. at 405.

Bryan County points out the difference between those § 1983 actions that present no difficult questions of fault and causation and those that do: In Pembaur, it was clearly established that the decision was that of the final municipal decision maker and was therefore attributable to the municipality. This established municipal liability, and there were no questions of fault or causation that arose. Id. at 406. In our case, the plaintiff should be allowed to demonstrate that the action taken by the City of Waterbury was taken with 'deliberate indifference' as to its known or obvious consequences." City of Canton v. Harris, 489 U.S. 378, 388 (1989), quoted in Bryan County at 407.

The defendant's reliance on Bryan County and Poe v. Leonard, 282 F.3d 123 (2d Cir. 2002), for the proposition that the plaintiff has failed to allege deliberate indifference is misdirected. Bryan County involved a claim of inadequate

8

screening, and Poe involved a claim of inadequate supervision. Plaintiff's complaint properly alleges a §1983 action that falls within the category of cases that present little question of fault or causation. Mayor Giordano was the final policymaker and decision maker who acted intentionally in executing an unlawful policy or custom that deprived the minor child of her constitutional rights to be free from sexual abuse and mistreatment. Therefore, the City has acted in an intentional manner.

### III. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF GOVERNMENTAL IMMUNITY.

As defendant has pointed out, municipal employees have qualified immunity in the performance of governmental duties, or discretionary acts, but may be held liable for the misperformance of ministerial acts. Evon v. Andrews, 211 Conn. 501, 505 (1989). Immunity from liability for the performance of discretionary acts, however, is subject to three exceptions. "First, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second where a statute specifically provides for a cause of action . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Id. Plaintiff has clearly alleged facts that fall within the first or third exception to immunity for the performance of discretionary acts, and therefore the defendant's motion to dismiss on the grounds of governmental immunity must be denied.

The first exception clearly applies in that a failure to act would likely subject an identifiable person to imminent harm. In the context of governmental immunity from liability, the Connecticut Supreme Court has stated that it has construed the

9

exception, where the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm, to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims. In delineating the scope of a foreseeable class of victims, the Connecticut courts have considered numerous criteria, including the immanency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. Vernia Dantzler v. City of New London, 1997 Conn. Super. LEXIS 1280.

The duty that Waterbury owed to the Plaintiff in our case is comparable to the police officer's duty owed to the plaintiff's decedent in Sestito v. Groton, 178 Conn. 520, 528 (1979). In Sestito, a policeman waited and watched a public disturbance without interfering until the plaintiff's decedent was shot. Id. at 526. The plaintiff's decedent alleged that the police officer was aware of the disturbance and did not immediately attempt to stop or to intervene when the opportunity existed. Id. The court in Sestito implemented the first exception and held that the identifiable person was harmed due to the actions of this officer and the case should be submitted to the jury. Id.

In our case, the Plaintiff properly alleges that she was an identifiable victim and that the failure to act by the City of Waterbury officials caused her harm. Specifically, she was harmed by the repeated sexual abuse at the hands of the Mayor on City property and the City officials who visit or frequent or are in charge of security of said property and who must have known or should have seen the Plaintiff visit said property. These allegations are sufficient to demonstrate that the

plaintiff was an identifiable person subject to imminent harm and as a result, the Defendant's claim of immunity must be denied.

Moreover, defendant neglects the fact that the Mayor himself was a city employee. In fact, the Mayor acted as the alter-ego of the City of Waterbury, under its "strong mayor" charter, and was under a duty not to subject Jane Doe Jr. to imminent harm. See WATERBURY CITY CHARTER, art. I., Section 2101-2, supra. The Mayor had a duty not to subject Jane Doe Jr. to risk of injury in witnessing the sexual actions of her mother and minor cousin. Plaintiff has also properly pled that the Mayor violated his discretionary duties as Mayor and leader of Waterbury when he intentionally and willfully sexually assaulted the minor children. The City must therefore be held liable under the first and third exceptions to immunity for discretionary acts. See Evon, supra. Therefore, Defendant's motion must be denied.

### IV. PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS LEGALLY SUFFICIENT.

It is clear from the City's charter that protecting and representing the citizens and domiciliaries of the City of Waterbury was Giordano's duty. See WATERBURY CIT"Y CHARTER, art. I., 2101-2102, supra. Moreover, as supervisor of the budget, constructive and actual head of the police department and having the power to impose marshal law in the City of Waterbury, Giordano was in fact the alter ego of the City of Waterbury and all his actions are therefore attributable to the City of Waterbury. See Suarez v. Dickmont Plastics Corp., 242 Conn. 255, 273-75 (1997).

## **CONCLUSION**

For all the foregoing reasons as outlined in this and co-plaintiff's brief the defendant's motion to dismiss must be denied.

THE PLAINTIFF

BY: _____
Attorney Gerald Harmon
Federal Bar #13523
290 Pratt Street
Meriden, CT 06450
(203) 639-1956

CERTIFICATION

I hereby certify that copies of the foregoing has been mailed, postage prepaid, this 8th day of July 2004, to the following counsel of record.

Sack, Spector and Karsten, LLP
Attorney Elliot Spector
836 Farmington Avenue
West Hartford, CT 06119

Michael Mackniak Esquire
869 Whalley Avenue
New Haven, CT 06515

Atty Lynn Jenkins
P.O. Box 59
New Haven, CT 06501

Atty. Michael S. Hillis
Dobriski, Knapsack & Hillis, LLC
205 Whitney Avenue
New Haven, Conn. 06511

Atty. Andrew B. Bowen
1804 Post Road East
Westport, Conn. 06880-5683

Atty. Elliot B. Spector
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119

The Honorable Stefan R. Underhill, USDJ
U.S. District Court
915 Lafayette Blvd
Bridgeport, CT 06604

Atty Erskine D. McIntosh
Federal Bar No. CT 09743
The Law Offices of Erskine D. McIntosh, P.C.
3129 Whitney Avenue 2nd Floor
Hamden, CT 06518-2364

Gerald L. Harmon