UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Bridgeport)

*******************************************

| | | |
|---|---|---|
| SUSAN ROE, JR., ppa ATTY. LYNN JENKINS, * | | |
|    GUARDIAN AD LITEM * | | 3:03 CV 571 (SRU) |
| * | | |
|          V. * | | JANUARY 23, 2006 |
| * | | |
| PHILIP GIORDANO, * | | |
|    In His Official and Individual * | | |
|    Capacity, * | | |
| THE CITY OF WATERBURY * | | **JURY DEMAND** |
| * | | |

*******************************************

## SECOND AMENDED COMPLAINT

PRELIMINARY STATEMENT

    This is a civil action for compensatory damages, punitive damages, costs, attorney fees and interest thereon, against the above named defendants. The plaintiff contends that while Susan Roe, Jr. was eight (8) years of age the defendant, Mr. Philip Giordano, then the Mayor of the City Waterbury, subjected the child to repeated acts of sexual abuse on a weekly basis between November, 2000 and July, 2001, in violation of the protection guaranteed to the child by the Due Process Clause Fourteenth Amendment to the United States Constitution and State of Connecticut common law.

    The plaintiff contends that the deprivations and violations of Miss Roe, Jr.'s federal constitutional and State common law rights were carried out by the then Mayor of Waterbury acting in his official capacity as the final policy maker in the areas of safety, law enforcement, political rights, and social issues, areas impacted by the Mayor's sexual abuse of the minor

1

child, to wit, Miss Roe, Jr., under color of law, that is under color of the Constitution, statutes, charter, ordinances, laws, rules, regulations, customs and/or usages of the City of Waterbury, the State of Connecticut and/or the United States which subjects both defendants to joint and several liability.

**COUNT ONE**
**FEDERAL LAW CLAIMS**

**JURISDICTION**

1. This action is brought pursuant to sections 1983, 1986 and 1988 of Title 42 of the United States Code and the Fourteenth Amendment to the U.S. Constitution. Jurisdiction is founded on 28 U. S .C. §§1331, 1343 (1) (2) (3) (4), 1367 and the aforementioned statutory and Constitutional provisions.

**THE PARTIES**

2. During all times mentioned in this Complaint, the plaintiff, a black female child, was, and she still is, a citizen of the United States and the State of Connecticut.

3. During all times mentioned in this Complaint the defendant, Mr. Philip Giordano (Mayor), was the duly elected and acting Mayor of the City of Waterbury acting in his official capacity. He is sued in his individual capacity and official capacity.

4. During all times mentioned in this Complaint, the Mayor, was the final policy maker for the City of Waterbury in the areas of safety, law enforcement, political rights, and social issues and acted under color of law, that is under color of the Constitution, statutes, charter, ordinances, laws, rules, regulations, customs and/or usages of the City of Waterbury, the State of Connecticut and/or the United States.

5. The co-defendant, City of Waterbury (City), during all times relevant to this complaint, was and remains a municipality duly incorporated and chartered under the laws of the State of Connecticut which, pursuant to its municipal charter, had as its final policy maker in the areas of safety, law enforcement, political rights and social issues the co-defendant Mayor.

**FACTS**

6. Miss Roe, Jr. first met the Mayor at his Law Office in the City when she was eight years old.

7. At that first meeting Miss Roe, Jr. was told by the Mayor to put his penis in her mouth.

8. Miss Roe, Jr.'s mouth touched the Mayor's penis and that the Mayor put his penis inside her mouth.

9. The Mayor touched her genitalia and breasts underneath her clothing.

10. Miss Roe, Jr. on at least two occasions was forced by the Mayor to perform fellatio on him and allow him to touch her genitalia and breasts in his home in Waterbury, Connecticut.

11. Miss Roe, Jr. was forced by the Mayor to perform fellatio on him and allow him to touch her genitalia and breasts inside his City issued police cruiser.

12. Miss Roe, Jr. was forced by the Mayor to perform fellatio on him and allow him to touch her genitalia and breasts inside The Office of the Mayor in Waterbury's Town Hall.

13. Miss Roe, Jr. and the co-plaintiff, Jane Doe Jr., were forced by the Mayor to take turns performing fellatio on him one at a time and forced to perform fellatio on him,

together, at the same time.

14. Miss Roe, Jr. was forced by the Mayor to perform fellatio on him in the Mayor's Office, the Mayor's City issued police cruiser, the Mayor's Law Office, and the Mayor's home residence.

15. Miss Roe, Jr. was forced by the Mayor to perform fellatio on him in his law office until he ejaculated.

16. Miss Roe, Jr. was forced by the Mayor to perform fellatio on him in a condominium on Oronoke Road in Waterbury, Connecticut.

17. Miss Roe, Jr. was forced by the Mayor to perform fellatio on him more than once a week between November 2000 and July 2001.

18. When Miss Roe, Jr. was forced by the Mayor to perform fellatio on him in his law office the carpet in the office entered her eyes and caused her physical discomfort and pain.

19. Miss Roe, Jr. was repeatedly told by the Mayor, after the sexual molestations to which she was forced to submit at the Mayor's hands that if she told anyone of these acts he would put her family and/or her in jail and/or that something "bad" would happen.

20. The Mayor's duties under §2101(a) of the Charter of the City (Charter) were to "cause the laws and ordinances to be executed and enforced and to conserve the peace within the city [.]"

21. Section 2102(a) the Charter gave the Mayor power to "assume the entire control and direction of the police and fire forces of the city, or either of them, for a period not

4

exceeding fifteen (15) days, at his discretion, in case of emergency, and to exercise all of the powers conferred upon the police and fire departments in relation thereto."

22. Moreover, §2102(b) of the Charter, gave the Mayor "all powers given by law to sheriffs in relation to riot assemblages" along with the power "to exert all the force necessary to enable him to execute the laws within the limits of the city" whenever the Mayor has reason to believe that opposition to the exercise of his authority will be made. §2102(c).

23. During his tenure as Mayor, the defendant would act as chairman of the City's Police Board meetings and gave the Superintendent of the Police Department orders to hire and promote police officers, which were followed by the Superintendent.

24. On April 16, 1996, the Mayor terminated the City's Superintendent of Police for insubordination. Thereafter, the Mayor had contact with the Police Department in running its internal operations.

25. The Mayor would also participate in police drug raids and other crime fighting operations within the City.

26. The Mayor implemented new hiring policies for the City's Police Department and played a key role in promoting police officers.

27. The Mayor made appointments to the City's Police Commission.

28. At times, the Mayor would conduct role call at the police department and addressed police officers before their shifts were to begin.

29. In the area of social issues, the Mayor promulgated the City's Sexual Harassment Policy, which contained a memorandum written by the Mayor to all municipal employees.

30. The Mayor's memorandum stated, "It is my intention to keep Waterbury the fine place to live and work as is characteristic of its past. Through your help and effort in observing this policy, that tradition will continue."

31. Section 2101 of the Charter established the Mayor as the Chief Executive Officer for the City in charge of the protecting its residents' political interests.

32. Section 2101 of the Charter vested in the Mayor power to act as "chairman, ex-officio…of all other boards or commissions or authorities. . ." with the exception of appeal and review boards.

33. Pursuant to the Charter §§2103 & 2102 (g) the Mayor had "the power to preside at any meeting he shall attend", including the power to cast the tie breaking vote at any meeting and the Mayor possessed power to "have a seat and voice and to introduce ordinances, but no vote, in the board of alderman."

34. The Mayor possessed the power to "suspend, pending hearing and action thereon, and to remove for cause, after due hearing, any board member appointed by the mayor or any appointed official, but not any elected official" according to §2102 (d) of the Charter.

35. The Mayor could also appoint persons to municipal employment positions, and promote municipal employees according to §2103(c) of the Charter.

36. All of the various City departments' budget proposals had to be presented to the Mayor for review and approval, including the budget for the Police Department.

37. The Mayor was responsible for all contracts entered into on behalf of the City pursuant to §2102 of the Charter.

38. The City was served with a notice of intent to sue on behalf of Susan Roe, Jr. pursuant to §7-465 CGS.

39. The Mayor was the final policy maker for the City of Waterbury in the areas of safety, law enforcement, political rights, and social issues and acted under color of law, that is under color of the Constitution, statutes, charter, ordinances, laws, rules, regulations, customs and/or usages of the City of Waterbury, the State of Connecticut and/or the United States and as a consequence of his aforementioned misdeeds, he subjected Miss Roe, Jr. to sexual abuse and thereby caused her humiliation, degradation, injury, and fear creating mental and emotional anguish and distress for which he is liable for the violation of the provisions of the 14th Amendment to the U.S. Constitution pursuant to 42 U.S.C. §1983.

40. As a consequence of the above stated actions of the Mayor, the City which, pursuant to its municipal charter, had as its final policy maker in the areas of safety, law enforcement, political rights and social issues the co-defendant Mayor; is liable to Miss Roe, Jr. for the sexual abuse, humiliation, degradation, injury, and fear creating mental and emotional anguish and distress she suffered at the hands of the Mayor in violation of the 14th Amendment to the U.S. Constitution pursuant to 42 U.S.C. §1983.

41. In the manner described above, the defendants incurred a joint and several liability by dint of the Mayor being the final policy maker in the areas of safety, law enforcement, political rights and social issues of the City; the areas affected by the Mayor's sexual abuse Miss Roe, Jr., then an eight year old minor child.

42. In the manner described in this Complaint, the defendants and each of them, jointly and severally are liable to Miss Roe, Jr. for the deprivation of her rights to be free from

illegally inflicted sexual abuse and the right to bodily integrity. All of these rights are secured to Miss Roe, Jr. by the provisions of the Fourteenth Amendment to the United States Constitution and by Title 42 U.S.C. §1983.

43. The Mayor was the final policy maker for the City of Waterbury in the areas of safety, law enforcement, political rights, and social issues, the areas affected by the Mayor's misconduct, and acted under color of law, that is under color of the Constitution, statutes, charter, ordinances, laws, rules, regulations, customs and/or usages of the City of Waterbury, the State of Connecticut and/or the United States and as a consequence of his misdeeds he wantonly and/or recklessly subjected Miss Roe, Jr. to sexual abuse in violation of the 14th Amendment to the U.S. Constitution and 42 U.S.C. §1983 that caused her humiliation, degradation, injury, and fear creating mental and emotional anguish and distress for which he and the City are jointly and severally liable to Miss Roe, Jr.

## COUNT TWO
## STATE LAW CLAIMS

1. Pursuant to the provisions of 28 U. S. C. §1367, the supplemental jurisdiction of this Court is invoked as to the claims of this count, which arise under the common law of the State of Connecticut.

2. This is an action for money damages to redress the deprivation by the defendants of rights secured to the plaintiff by the common law of the State of Connecticut. The co-defendants are liable to the plaintiff, jointly and severally, for the battery, the intentional infliction of emotional distress, and/or negligent infliction of emotional distress to which she was subjected as stated in Count One.

3-42.   Paragraphs 2 through 43 of Count One are hereby incorporated as paragraphs 3-42 of Count Two.

43.   In the manner described above, the defendant Mayor committed the tort of battery, in that he attempted with force and violence to do corporal offense to the plaintiff, and was successful in that attempt, by inflicting upon the plaintiff's person repeated unwanted touchings without justification or excuse. The acts and omissions of the defendant, as outlined above, was the proximate cause of damages to the plaintiff as set out above. The plaintiff is protected against such conduct by the defendant under Connecticut law, the provisions of which are invoked under this Court's supplemental jurisdiction.

44.   In the manner described above, the defendant Mayor further committed the tort of intentional infliction of emotional distress, in that he intended to inflict emotional distress upon Miss Roe, Jr., or that he knew or should have known that emotional distress was the likely result of his misconduct; that the misconduct was extreme and outrageous; that the defendant's conduct was the cause of the plaintiff's distress; and that the emotional distress sustained by the plaintiff was severe. The acts and omissions of the defendant, as outlined above, were the proximate cause of damages to the plaintiff. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, the provisions of which are invoked under this Court's supplemental jurisdiction.

45.   In the manner described above, the defendant Mayor further committed the tort of negligent infliction of emotional distress, in that he engaged in misconduct with the plaintiff that involved an unreasonable risk of causing Miss Roe, Jr., emotional distress. The acts and omissions of the defendant, as outlined above, were the proximate cause of damages to the

plaintiff. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, the provisions of which are invoked under this Court's supplemental jurisdiction.

46. In the manner described above, the defendants incurred a joint and several liability for the aforementioned violations of Connecticut common law, by dint of the Mayor being the final policy maker in the areas of safety, law enforcement, political rights and social issues of the City, which areas were affected by the Mayor's sexual abuse Miss Roe, Jr., who at that time was an eight (8) year old minor child.

WHEREFORE, the plaintiff, claims judgment against the defendants and each of them, jointly and severally, as follows:

    A.    Compensatory damages;

    B.    Punitive damages;

    C.    Attorney fees, expert witness fees and costs of this action;

    D.    Such further relief as this Court deems appropriate to award.

RESPECTFULLY SUBMITTED,

ATTY. LYNN JENKINS, GUARDIAN AD LITEM for SUSAN ROE, Jr.

By: _____
ATTY. ERSKINE D. McINTOSH
FEDERAL BAR NO. CT 09743
THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.
3129 WHITNEY AVENUE, SECOND FLOOR
HAMDEN, CONN. 06518-2364
(203) 787-9994


By: _____
GERALD L. HARMON, ESQUIRE
FEDERAL BAR NO. CT 13523
THE LAW OFFICES OF GERALD L. HARMON
290 PRATT STREET
MERIDEN, CONN. 06450
(203) 639-1956

PLAINTIFF'S COUNSEL

### CERTIFICATION

I hereby certify that copies of the foregoing Amended Complaint were mailed to the following on January 23, 2006 as follows:

Elliot B. Spector, Esquire
~~Sack, Spector and Karsten~~ Noble, Spector, Young & O'Connor
~~836 Farmington Avenue~~ One Congress St.
~~West Hartford, CT 06119-1544~~ Hartford, CT 06114

Michael Mackniak, Esquire
87 Meadow Street
Naugatuck, CT 06770

Michael S. Hillis, Esquire
Dobriski, Knapsack & Hillis
129 Whitney Avenue
New Haven, CT 06511

11

Andrew B. Bowen, Esquire
1804 Post Road East
Westport, CT 06880-5683

Atty. Lynn Jenkins
129 York Street, Apt. 8-L
New Haven, CT 06511

Atty. Allison L. Jacobs
84 Sherman Avenue
Hamden, CT 06518

_____
ATTY. GERALD L. HARMON

19 COMPLAINT-SECOND AMENDED -GIORDANO

12