FILED

2006 MAR 20  P 2: 39

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Bridgeport)

***

| | | |
|---|---|---|
| SUSAN ROE, JR. ppa ATTY. LYNN JENKINS, GUARDIAN AD LITEM | * * * | 3:03CV00571 (SRU) |
| V. | * * | |
| PHILIP GIORDANO & THE CITY OF WATERBURY, CONNECTICUT | * * * | March 16, 2006 |

***

**PLAINTIFF, SUSAN ROE JR'S, MEMORANDUM OF LAW IN REPLY TO DEFENDANT CITY OF WATERBURY'S OBJECTION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT, CITY OF WATERBURY'S, MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................1

STATEMENT OF CASE........................................................................................2

SUMMARY JUDGMENT STANDARD...................................................................4

I.     THE COURT SHALL GRANT THE MOVING PARTY SUMMARY
JUDGMENT WHERE THE RECORD TAKEN AS A WHOLE
SHOWS THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL
FACT AND THE MOVING PARTY IS ENTITLED TO JUDGMENT
AS A MATTER OF LAW.................................................................................4

LAW AND ARGUMENT........................................................................................5

I.     THE CITY IS LIABLE FOR THE MAYOR'S SEXUAL ABUSE OF
MS. ROE BECAUSE THE MAYOR WAS THE FINAL
POLICYMAKER FOR THE CITY IN THE AREAS HE DEPRIVED
MS. ROE OF HER CONSTITUTIONAL RIGHTS.............................................5

    A.    The Mayor's Sexual Abuse of Ms. Roe Did Not Require Formal
Approval By the City In Order to Constitute Municipal Policy
Because the Mayor's Actions Alone Constituted Final Policy........................8

    B.    The City Was the Moving Force Behind the Violations of
Ms. Roe's Constitutional Rights Because the City's Final
Policymaker Directly Caused the Violations..............................................11

    C.    The Major Supreme Court Decisions Support Plaintiff's Claim
for Municipal Liability Under § 1983 and Judgment as a Matter
of Law.................................................................................................12

    D.    The Cases Cited By Defendant to Support Its Argument Are
Distinguishable From the Present Matter and Do Not Diminish
Plaintiff's Argument for Summary Judgment............................................14

    E.    Plaintiff Bases the City's Liability on 42 U.S.C. § 1983 Based
On the Mayor's Authority as Final Policymaker for the City, Not
on the Theory of Respondeat Superior as Defendant Appears
to Suggest..........................................................................................17

F. The Mayor's Sexual Abuse of Ms. Roe is a Proven Fact and Not "Alleged" as Defendant Attempts to Characterize the Abuse..............18

G. The Mayor's Conduct in Sexually Abusing Ms. Roe and Ms. Doe is Not Protected Under the Doctrine of Qualified Immunity Because Any Reasonable Official Would Have Known Sexually Abusing the Plaintiffs Violates the Minor Children's Clearly Established Constitutional Rights to be Free From Sexual Abuse..............18

II. THE DOCTRINE OF COLLATERAL ESTOPPEL PROPERLY APPLIES TO THE CITY BECAUSE THE MATERIAL ISSUES OF FACT PERTAINING TO PLAINTIFF'S § 1983 CLAIMS AGAINST THE CITY WERE PREVIOUSLY LITIGATED AND DECIDED IN THE MAYOR'S CRIMINAL CONVICTION..............20

    A. The City and the Mayor Are Privies With Respect to Plaintiff's § 1983 Claims Because the Issues Decided in the Mayor's Criminal Trial Are Virtually Identical to the § 1983 Issues Now Before the Court, the Mayor's § 242 Conviction was for Conduct Undertaken in his Official Capacity as Mayor and the Mayor and City Shared a Sufficiently Close Relationship..............21

        1. The Mayor and City are in privity because their interest, as it relates to Plaintiff's § 1983, claims are virtually identical..............24

        2. The Mayor and City are in privity because Plaintiff's § 1983 claims involve actions the Mayor took under the color of law in his official capacity..............26

        3. The Mayor and City are in privity because they had a sufficiently close relationship such that the Mayor, in effect, was the City..............27

        4. The City previously recognized the dispositive effect of the Mayor's § 242 conviction for acting under the color of law on its own § 1983 liability..............27

        5. The City's reliance on *Stichting* is misplaced because the case is factually distinguishable from the present matter and does not involve a question of municipal liability under § 1983..............28

B. The Issue Decided in the Mayor's Criminal Trial, i.e. "That He Was Acting Under the Color of Law" is Identical to the Issue Here, i.e. "Whether the Mayor was Acting as Final Policymaker" Because Under the City's Strong Mayor Charter When the Mayor Was Acting Under the Color of State Law He Was Acting as a Final Policymaker.................................................................................30

C. The City's Interests Were Fully and Fairly Litigated in the Criminal Trial Because the Mayor's Interests in Defending Against the 18 U.S.C. § 242 Charges Was Identical to the City's Interests in Defending Against 42 U.S.C. 1983 Liability.....................................31

D. Even if the Court Finds a Lack of Privity Among the Defendants, the Court Should Still Grant Plaintiff Summary Judgment Because the City is Collaterally Estopped From Re-Litigating the Mayor's Liability as the Issue of the Mayor Acting as the City's Final Policymaker is Determined By Looking to the City Charter and State Law...............................................................................................32

CONCLUSION..................................................................................................34

## PRELIMINARY STATEMENT

Plaintiff, Susan Roe, Jr., submits the following Memorandum in further support of Plaintiff's Motion for Summary Judgment and Memorandum dated August 18, 2005, and in opposition to Defendant, City of Waterbury's (hereinafter "the City"), December 1, 2005 Motion for Summary Judgment. Plaintiff's Motion for Summary Judgment should be granted, and the City's motion denied, because the City is liable under 42 U.S.C. § 1983 for Mayor Philip Giordano's (hereinafter "the Mayor") sexual assaults on Ms. Roe because the Mayor was the City's final policymaker and used the broad powers granted to him under the City Charter to carry out an executive policy of sexual molestation and abuse. There is no genuine issue of material fact as to the Mayor acting under the color of law and as the final policymaker for the City when he violated Ms. Roe's Fourteenth Amendment rights. Further, the City is barred under the doctrine of collateral estoppel from re-litigating the issues of liability already decided in the Mayor's criminal trial. Therefore, Ms. Roe respectfully requests that the Court deny the City's Motion for Summary Judgment and grant Ms. Roe's Motion for Summary Judgment.

## STATEMENT OF CASE

### 1. Factual Background

Plaintiff reasserts the factual history of this matter as fully set forth in Plaintiff's Memorandum in Support for Summary Judgment (hereinafter "Plaintiff's Memorandum") of August 18, 2005, pages four (4) through thirteen (13), and Local Rule 9(c) statement.[1]  As more fully set forth in Plaintiff's Memorandum, the Mayor acted as the

---

[1] Plaintiff inadvertently filed under the old Local Rule 9(c), which is the equivalent to the new Local Rule 56(c). The purpose and effect of Plaintiff's Local Rule 9(c) statement is intended to be equivalent to a Local Rule 56(c) statement.

1

City's final policymaker, pursuant to the broad powers vested in him under the Connecticut General Statutes § 7-193 and the Waterbury City Charter, in the areas of safety and law enforcement, political interests, and social issues.[2] From November 2000 through July 2001, the Mayor sexually abused Ms. Roe and the Co-Plaintiff, Ms. Doe, forcing the minor children to perform fellatio on him. The Mayor facilitated such sexual abuse through the use of his City issued cellular telephones, City police cruisers, City Mayor's Office and City finances. The Mayor used the unfettered powers vested in him under the Connecticut General Statutes and the City Charter to threaten and coerce Ms. Roe and Ms. Doe into performing fellatio on him during numerous occasions between November 2000 and July 2001. The Mayor sexually abused Ms. Roe in the City's Mayor Office and City issued police cruiser. Further, the Mayor engaged in such sexual abuse at times when he was supposed to be tending to City business. Ms. Roe and Ms. Doe knew their abuser was the City's Mayor and perceived the Mayor's powers as omnipotent. The minor children were coerced by the Mayor's threats to use his Mayoral powers to put Ms. Roe and Ms. Doe, along with their families, in prison if they did not go along with the sexual abuse.

Notably, the City does not challenge or dispute the factual history as set forth in Plaintiff's Memorandum or Local Rule 9(c) statement. The City's Memorandum in Opposition to Plaintiffs' Motions for Summary Judgment and in Support of Defendant, City of Waterbury's Motion for Summary Judgment as to Plaintiffs Roe, et al, and Doe, et al (hereinafter "Defendant's Memorandum") does not set forth any factual history or

---

[2] The relevant portions of the City Charter were attached to Plaintiff's Memorandum of August 18, 2005 as Addendum #2.

background. Moreover, the City has not cited any evidence, or presented any affidavits, in that refutes Ms. Roe's assertion of the material facts.

### 2. Procedural Background

On August 18, 2005, Plaintiff, Susan Roe, Jr., moved for summary judgment against the Defendants, City of Waterbury and its former Mayor Philip Giordano, as to liability only under 42 U.S.C. § 1983 for the Defendants violations of Ms. Roe's federally protected Constitutional rights. On January 26, 2006, Plaintiff filed an amended Complaint to also allege liability against the Mayor in his official capacity, in addition to suing him in his individual capacity. Plaintiff moved for summary judgment pursuant to Rule 56 (c) of the Federal Rules of Civil Procedure, and upon the grounds of collateral estoppel based on the criminal judgment in *U.S. v. Giordano* (Docket No. 3:01CR216(AHN). On December 1, 2005, the City filed an objection to Ms. Roe's motion for summary judgment and moved for summary judgment itself. The Mayor has not filed an objection or response to Plaintiff's summary judgment motion. Plaintiff has filed a motion to enter a default judgment against the Mayor, in his individual and official capacities.

On March 3, 2006, the United States Court of Appeals for the Second Circuit ruled on Mayor Giordano's appeal of, *inter alia*, his conviction under 18 U.S.C. § 242 for depriving the Plaintiffs of their due process rights to be free from sexual abuse while acting under the color of law as the City's mayor. *United States v. Giordano*, 2006 WL 509427 (2d Cir. 2006) (Addendum #1). The Second Circuit upheld the Mayor's conviction under 18 U.S.C. § 242 and determined that the evidence produced at trial

3

was sufficient to prove that the Mayor acted under the color of law when he deprived the Plaintiffs of their constitutional rights. *Id.* at 8-11.

## SUMMARY JUDGMENT STANDARD

### I. THE COURT SHALL GRANT THE MOVING PARTY SUMMARY JUDGMENT WHERE THE RECORD TAKEN AS A WHOLE SHOWS THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

The moving party is entitled to judgment as a matter of law "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Konikoff v. Prudential Ins.*, 234 F.3d 92, 97 (2d Cir. 2000). Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party carries the burden to establish that no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Once the moving party has satisfied its burden, the nonmoving party then bears the burden of going beyond the pleadings and designating specific facts to show that there is indeed genuine factual issues for trial. *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir.2002) citing *Celotex Corp.*, 477 U.S. at 324). Summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp.*, 477 U.S. at 323.

4

## LAW AND ARGUMENT

### I. THE CITY IS LIABLE FOR THE MAYOR'S SEXUAL ABUSE OF MS. ROE BECAUSE THE MAYOR WAS THE FINAL POLICYMAKER FOR THE CITY IN THE AREAS HE DEPRIVED MS. ROE OF HER CONSTITUTIONAL RIGHTS.

The City is liable under 42. U.S.C. § 1983 for the Mayor's sexual abuse of Ms. Roe because the Mayor was the final policymaker for the City--granted broad policymaking authority under the City Charter—in the areas he deprived Ms. Roe of her Fourteenth Amendment Constitutional rights. Defendant claims it cannot be held liable for the Mayor's abuses of power because Plaintiff cannot produce "evidence that any municipal employees reasonably knew of Giordano's alleged criminal activity or that City agents were either grossly negligent or deliberately indifferent to the plight of Ms. Roe and Ms. Doe in failing to discover their abuse." Defendant's Memorandum at 2. Defendant, in this statement, and its subsequent analysis of § 1983 municipal liability, fails to recognize that a municipality is liable for the constitutional violations of its final policymakers committed under the color of law and that gross negligence or deliberate indifference are <u>not</u> necessary elements in order to establish municipal liability. Throughout the Defendant's Memorandum, the City fails to accurately state Plaintiff's burden in establishing municipal liability under § 1983 and therefore Plaintiff finds it necessary to accurately set forth the relevant § 1983 analysis.

The Supreme Court has held that a municipality is liable under § 1983 for the constitutional deprivations caused by the municipality's final policymaker for the areas in which the constitutional deprivations occurred. *McMillian v. Monroe County Alabama*, 520 U.S. 781, 785 (1997). The Court has held "proof that a municipality's ... authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right

5

necessarily establishes that the municipality acted culpably." *Board of the County Comm'rs of Byran County, Okalahoma v. Brown*, 520 U.S. 397, 405 (1997). Following this Supreme Court precedent, the Second Circuit Court of Appeals has determined municipal liability attaches under § 1983 for "[a]ctions by an individual with final decision-making authority in a municipality...." *Anthony v. City of New York*, 339 F.3d 129, 139 (2nd Cir. 2003).

Defendant mischaracterizes the crux of Plaintiff's argument in its syllogism on the bottom of page ten (10) of Defendant's Memorandum.[3] A more accurate syllogism of Plaintiff's argument, and accurate capsulation of the relevant § 1983 case law regarding municipal liability, would read:

> Giordano was the Mayor for the City of Waterbury and had final policymaking authority in the areas of law enforcement and safety, political interests, and social issues. The Mayor used the final policymaking authority vested in him under the City Charter and Connecticut General Statutes to sexually abuse Ms. Roe and Ms. Doe. Therefore, because the City's final policymaker used his final policymaking authority to sexually abuse Ms. Roe and Ms. Doe, the policy of the City, embodied in the Mayor's executive actions, deprived Ms. Roe and Ms. Doe of their constitutional rights, and the City is liable under § 1983.

Plaintiff's Memorandum set forth sufficient evidence showing that the City Charter, and C.G.S. § 7-193, established the Mayor as the City's final policymaker in a number of areas under the City Charter, including safety and law enforcement, political interest, and social issues. The Second Circuit has held that a municipal "official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (quoting *Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 45 (2d

---

[3] Defendant's syllogism asserts: "Giordano is the Mayor of the City of Waterbury and had some authority to set City policy. Giordano sexually molested little girls. Therefore, because Giordano sexually molests little girls, the official policy of the City of Waterbury is to sexually molests little girls."

6

Cir. 1983). Because the City Charter granted the Mayor broad final policymaking authority, the actions he engaged in while acting under the color of law constituted the City's final policy.

The record before the Court establishes that there is no material issue of fact as to the City's liability under § 1983. The City is liable under § 1983 because Philip Giordano acted under the color of law as the Mayor for the City of Waterbury when he sexually abused Ms. Roe and deprived her of Fourteenth Amendment rights. The Mayor was convicted under 18 U.S.C. § 242 for willfully depriving Ms. Roe of her rights under the Fourteenth Amendment of the United States Constitution and causing her bodily injury while acting under the color of state law as the Mayor for the City of Waterbury. (Tr. at 2143-46);[4] *United States v. Giordano*, 2006 WL 509427. Further, Ms. Roe's undisputed affidavit establishes that the Mayor sexually abused Ms. Roe by using the powers and trappings vested in him as the City's mayor.[5] At the time the Mayor deprived Ms. Roe of her constitutional rights, he was acting as the City's final policymaker, pursuant to the broad powers vested in him under Connecticut General Statutes § 7-193 and the City Charter, and violated Ms. Roe's rights in one or more of the areas in which he was the City's final policymaker, i.e. safety and law enforcement,

---

[4] The "Tr." abbreviation refers to the Official Transcript from the criminal trial of *U.S. v. Giordano*, Docket No. 3:01CR216(AHN). The cited transcript pages were attached to Plaintiff's August 18, 2005 Memorandum. The incidences of sexual abuse perpetrated by the Mayor upon Ms. Roe and Ms. Doe, along with the Mayor's criminal conviction, are fully set forth on pages eight (8) through thirteen (13) of Plaintiff's Memorandum.

[5] Plaintiff's Affidavit was attached as Addendum #1 to Plaintiff's August 18, 2005 Memorandum.

7

political interests, and social issues.[6] Therefore, the City is liable for the actions of its Mayor under § 1983.

### A. The Mayor's Sexual Abuse of Ms. Roe Did Not Require Formal Approval By the City In Order to Constitute Municipal Policy Because the Mayor's Actions Alone Constituted Final Policy.

Contrary to Defendant's contention, the Mayor's sexual abuse of Ms. Roe did not require formal approval by the City in order to constitute municipal policy, because the Mayor's authority was such that his actions alone constituted municipal policy. The City does not challenge or dispute that the Mayor was the final policymaker for the City. In fact, Defendant agrees with Plaintiff on this point:

> While it is admitted that the mayor was the official policymaker in many respects when conducting City business it is clear that he was not acting on behalf of the City when he allegedly committed the described criminal acts.

(Defendant's Memorandum at 6.) Defendant, however, fails to recognize that the Mayor's sexual abuse of Ms. Roe need not have been formally approved through the City's official policymaking channels in order to be municipal policy and therefore attach liability to the City. *Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2nd Cir.2003) (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)). Plaintiff has submitted evidence, particularly the City Charter, showing the Mayor to be the top policymaker for the City in a number of broad areas; thus, no formal approval beyond the Mayor himself was required to set municipal policy in these areas.

---

[6] The final policymaking authority vested in the Mayor, and exercised by the Mayor, are fully set forth on pages four (4) through (8) of Plaintiff's August 18, 2005 Memorandum. Notably, the City does not challenge Ms. Roe's factual assertions that the Mayor was vested with final policymaking authority under the City Charter in the areas set forth in Plaintiff's Memorandum.

The Mayor's sexual abuse of Ms. Roe constituted City policy despite the evidence submitted by Defendant that the City arrested criminals for sexually assaulting children during the Mayor's tenure. The existence of well-established official policy will <u>not</u> insulate a municipality from liability for the conduct of its official policymaker. *Bennett v. Pippin*, 74 F.3d 578, 586, n.5 (5th Cir. 1996) ("The fact that rape is not a legitimate law enforcement goal does not prevent the Sheriff's act [in raping the plaintiff] from falling within his law enforcement function...."); *Gonzalex v. Yselta Independent School District*, 996 F.2d 745 (5th Cir. 1993) (final policymaker's decision will subject municipality to liability even though the action is inconsistent with existing policy.). Under the City's rationale, despite granting the Mayor broad final policymaking authority, the City could never be held liable for the policy set by the Mayor's executive actions so long as the City articulated an alleged "official" policy to the contrary.

Defendant even admits that "Giordano actively funded the police department" and then seems to suggests that this shows the Mayor set a policy against sexually abusing children. (Defendant's Memorandum at 11). The City fails to recognize that the Mayor, who was responsible for "actively funding the police department", used the resources and powers vested in him as the top law enforcement authority in order to establish and carry out a policy of sexual abuse for the City. In particular, the Mayor funded the police department and then used the City issued police cruiser, mayoral badge, and arrest powers as top law enforcement official to arrange for and coerce a policy of sexually abusing Ms. Roe.

It is not the form of the action that establishes final policy, but whether the "promulgator" or "actor was at the apex of authority for the action in question."

9

*Gernetzke v. Kenosha Unified School District*, 274 F.3d 464, 468, 469 (7th Cir. 2001), cert denied, 535 U.S. 1017 (2002) ("it does not matter what form the action of the responsible authority that injures the plaintiff takes. It might be an ordinance, a regulation, an executive policy, or executive act (such as firing the plaintiff). The question is whether the promulgator, or the actor, as the case may be—in other words, the decisionmaker—was at the apex of authority for the action in question."). Here, the Mayor, who "was at the apex of authority" in the areas of safety, law enforcement, social and political issues, used his executive powers to make possible the sexual abuse Ms. Roe and Ms. Doe on numerous occasions, for which the City and the Mayor, in his official and individual capacities, are liable.

The Eleventh Circuit Court of Appeals in *Berdin v. Duggan*, 701 F.2d 909 (11th Cir. 1983) cert. den. 464 U.S. 893, held a city liable for the constitutional violations of its mayor, where the mayor's actions constituted final city policy, because he was given unlimited authority in the area in which he committed the constitutional violation. In *Berdin* a city ordinance granted the mayor unlimited power to hire and fire city employees, without placing any limitation on the mayor's discretion. *Id.* at 914.

> Florida City Ordinance 73-1 ... grants the mayor authority over city employees with the power to hire and fire. The ordinance imposes no limit on the mayor's discretion.

*Id.* The city was held liable under 42 U.S.C. § 1983 for the mayor's constitutional violations in firing a city employee in contravention of the employee's First Amendment rights in the area where the mayor was the final city authority. *Id.* at 914-15; *see also Patterson v. Utica*, 370 F.3d 322, 330-31 (2d Cir. 2004) ("since the City concedes that its mayor is a high-ranking official with final policymaking authority within the municipal

10

employment area at issue in this case, the City can, pursuant to § 1983, be held liable for the actions of its mayor."). Here, the City Charter granted the Mayor unlimited authority to set municipal policy in a number of areas, including, for example, sexual harassment. As in *Berdin*, the evidence presented to the Court shows that the Mayor used his unlimited discretionary powers to violate Plaintiff's constitutional rights in the very area the City granted him unlimited power. Therefore, the City is liable for the Mayor's constitutional violations.

### B.    The City Was the Moving Force Behind the Violations of Ms. Roe's Constitutional Rights Because the City's Final Policymaker Directly Caused the Violations.

The City was the moving force behind the violations of Ms. Roe's constitutional rights because its final policymaker directly deprived the Plaintiffs of their constitutional rights. Although the City would have the Court believe that municipal liability cannot be attached here because the City Charter did not give the Mayor "authority to sexually molest children" and the Mayor was not "acting in the interests of the City" when committing said acts, such elements are not required in order to establish municipal liability under § 1983. What is required is that the municipality be the "moving force" behind the constitutional violation. *The City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). Defendant agrees with Plaintiff on this matter and proclaims: "the City of Waterbury's liability ... hinges on whether a policy of the City was the moving force behind the alleged constitutional violation." (Defendant's Memorandum at 5). The City, however, fails to recognize that an action taken by a final policymaker that violates a constitutional right establishes the municipality as the moving force behind the constitutional violation. *Board of the County*

*Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405 (1997). The Court in *Bryan County* proclaimed:

> Proof that an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpable. Similarly, the conclusion that the action taken or directed by the municipality or its <u>authorized decisionmaker</u> itself violates federal law will also determine that the municipal action was the <u>moving force</u> behind the injury of which the plaintiff complains.

*Id.* (emphasis added).

Here, the City was the moving force behind Ms. Roe's constitutional deprivations because the Mayor was the final policymaker for the City for the areas in which Ms. Roe's constitutional rights were violated, and the Mayor's intentional conduct caused the violations of Ms. Roe's constitutional rights. Plaintiff has submitted evidence to establish the above elements and Defendant has submitted no evidence to the contrary. Therefore, Ms. Roe is entitled to judgment as a matter of law and the City's motion for summary judgment ought to be denied.

### C. <u>The Major Supreme Court Decisions Support Plaintiff's Claim for Municipal Liability Under § 1983 and Judgment as a Matter of Law.</u>

The Supreme Court case law supports Ms. Roe's claim of municipal liability under § 1983 and supports her motion for summary judgment. In *Byran County*, 520 U.S. at 405, the Court determined "proof that a municipality's ... authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." The Court has also determined that it is a question of law whether a municipal official is a final policymakers and that looking to local and state law makes such a determination. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989). Defendant, nonetheless,

12

attempts to convolute the relevant case law in this area to create a question of material fact where none exists.

Defendant misapplies *Bryan County* and offers an incomplete assessment of its holding and applicability to the present matter. (Defendant's Memorandum at 7.) Defendant claims that *Bryan County* distinguished between "§ 1983 cases that present no difficult questions of fault and causation and those that do." *Bryan County*, 520 U.S. at 405. Defendant, however, fails to note that *Bryan County* goes on to state that actions by final policymakers that are unlawful establish obvious causation on the part of the municipality. *Id.* at 406-07. Here, there is no question that the Mayor's actions were unlawful. Plaintiff has offered evidence that the Mayor was the City's final policymaker and caused the unlawful constitutional deprivations to Ms. Roe therefore causation on the part of the City is easily established.

Defendant attempts to distinguish *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), from the present matter because the Mayor's sexual abuse of Ms. Roe cannot be related to "any legitimate municipal objectives." (Defendant's Memorandum, p. 14.) In *Pempbaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986), the Court held liability attaches to the municipality where a decision-maker possess final authority to establish municipal policy with respect to the actions taken and makes a deliberate choice to follow a course of action. *Id.* at 481. "If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id. Pembaur* does not limit municipal liability based the acts of a final policymaker to "legitimate municipal objectives." Rather, the *Pembaur* Court concludes:

13

> We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* at 483.

Under the precedent set forth in *Pembaur*, the City is liable for the deliberate actions of its final policymaker, i.e. the Mayor. The Mayor, acting under the power and trappings of his office, *made a deliberate choice to use his powers to sexually molest Ms. Roe and Ms. Doe.* The Mayor's deliberate action in sexually molesting Ms. Roe carried the weight executive action and set de facto final policy for the City.

### D. The Cases Cited By Defendant to Support Its Argument Are Distinguishable From the Present Matter and Do Not Diminish Plaintiff's Argument for Summary Judgment.

In support of its argument, Defendant cites six cases that are, upon closer analysis, wholly distinguishable from the present matter and therefore should be given no weight by this Court in deciding this matter. The cases cited by Defendant are distinguishable because they do not involve a final policymaker with authority tantamount to the final policymaking authority vested in the Mayor under the City Charter.

In *Kohler v. City of Wapakoneta*, 381 F.Supp.2d 692, 712 (N.D. Ohio, 2005), the Ohio District Court did not find the City liable for its police chief placing a tape recorder in the women's bathroom because the "action was not taken in the course of any official function." Here, the Mayor was acting under the color of law, i.e. the City Charter, and utilizing the powers of his office, i.e. cellular phones, City police cruise, and Mayor's

14

Office when molesting Ms. Roe and Ms. Doe. Unlike in *Kohler*, the Mayor used his power as the City's top law enforcement authority to threaten and coerce his victims.

The case of *Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001) does not stand for the proposition, as Defendant claims, that a city cannot be held liable for a rape committed by a municipal official. The *Griffin* court expressly stated: "By our decision today, we do not preclude the possibility that under some facts, a rape or sexual assault could be part of a pattern or custom of sexual harassment." *Id.* at 1312, n. 21. Notably, the Fifth Circuit Court of Appeals held in *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996) that a county sheriff can be held liable for a rape committed by its top law enforcement official. The *Bennett* court proclaimed:

> The fact that rape is not a legitimate law enforcement goal does not prevent the Sheriff's act from falling within his law enforcement function.... Under the Archer County power structure, no one had state law authority to contests the Sheriff's use of his power to place himself in a position to rape [the plaintiff].

Id. at 586, n.5. In *Bennett* the plaintiff turned herself in to local police after shooting her husband during a violent domestic dispute. *Bennett*, 74 F.3d at 583. The plaintiff was subsequently released and returned home. Later, the local sheriff went to the plaintiff's home and threatened her with his power as a law enforcement officer in order to sexually assault her. *Id.* He told her that he was the sheriff and could do anything he wanted and that he could have her tossed into jail. *Id.* The factual nature of *Bennett* is similar to the case now before this Court. Here, the Mayor used his power to meet with Ms. Roe and threatened and coerced her with his authority as the City's final policymaker in order to sexually molest Ms. Roe. The Court therefore should give weight to the *Bennett* decision and not Defendant's misstated proposition of *Griffin*.

15

The case of *Wooten v. Logan*, 92 Fed. Appx. 143, 146-47 (6th Cir. 2004) is distinguishable from the present matter because in *Wooten* the sheriff was not acting in a policymaking capacity when he detained and sexually assaulted the plaintiff, where in the present matter the Mayor was acting in a policymaking capacity. The *Wooten* court determined that the sheriff was not acting in a policymaking capacity because he "abused his power in a way that any lower level law enforcement officer could abuse his power. *Id.* at n.3. However, in the present matter, the Mayor utilized his powers as the City's Chief Executive Officer under Connecticut General Statutes § 7-193(a)(2)(C) and (b) and the City Charter, with his access to his City issued police cruiser, Mayor's Office, mayoral badge, and City issued cellular phones in order to sexually abuse Ms. Roe and Ms. Doe. Moreover, the Mayor as final law enforcement policymaker was able to threaten and coerce Ms. Roe in ways that a lower level official could not. Thus, unlike in *Wooten*, the Mayor was not acting as a lower level official, but as the Mayor—the top policymaking official for the City.

The case of *Doe v. Patton*, 377 F.Supp.2d 615 (E.D. Ky. 2005), is wholly distinguishable from this case because *Patton* did not even involve a final policymaker, but, rather, a low-level city employee with no final policymaking authority. The sexual assault in *Patton* was committed by a city janitor who, unlike the Mayor, had no final policymaking authority. Similarly, the case of *Rose v. Zillioux*, 84 Fed. Appx. 107 (2d Cir. 2003), is inapplicable to the present case because it too involved a low ranking city employee with no final policymaking authority. The municipal employee in *Rose* worked for the New York State Canal Corporation and had no power to set final policy for the municipality.