UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT
(Bridgeport)

FILED

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*    2006 APR 25  A 11: 39

SUSAN ROE, Jr. ppa ATTY. LYNN JENKINS\*
GUARDIAN AD LITEM

              &ast;

V.             &ast;  NO.: 3:03 CV 571 (SRU)

              &ast;

              &ast;

PHILIP GIORDANO (In his official & individual  &ast;
capacities) & THE CITY OF WATERBURY,  &ast;
CONNECTICUT         &ast;  APRIL 27th, 2006
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF SUSAN ROE's POST SUMMARY JUDGMENT HEARING SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDMENT AND IN OBJECTION TO THE DEFENDANTS' POSITIONS ON SUMMARY JUDGMENT

Comes now the plaintiff, by and through her counsel, who entreats this Court to grant

her motion for summary judgment as against both defendants, to overrule the defendants'

objections to her motion for summary judgment, and to sustain her objections to the City's

motion for summary judgment.

During the hearing on the parties' motions and objections to summary judgment, this

Court expressed reservation about granting the plaintiff's motion as against the City because of

the Court's interpretation of a passage from <u>Board of the County Commissioners of Bryan</u>

<u>County, Oklahoma v. Jill Brown</u>, 520 U.S. 397, 117 S.Ct. 1382, 137 L. Ed. 2d 626 (1997).

This Court quoted language from the opinion that appears in two areas of the decision to wit,

"[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless

*deliberate* action attributable to the municipality itself is the "moving force" behind the

plaintiff's deprivation of federal rights." <u>Id</u>. 520 U.S. at 400, 117 S.Ct. at 1386. (Emphasis in

original) The <u>Bryan County</u> opinion goes on to expand upon that point:  "The plaintiff must . . . demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  <u>Id</u>. 520 U.S. at 404, 117 S.Ct. at 1388. (Emphasis in original)

It is from this language that this Court stated it had drawn the conclusion that, "[T]here has to be some deliberate action that's attributable to the city [of Waterbury], not simply that its action by a final policy-maker but that it's in connection with the authority granted that final policy-maker."  (T. 28)[1] This Court opined that in order for Waterbury to be liable under a final-policy maker analysis the plaintiff should have to show that Mayor Giordano's molestation of the plaintiffs was "in furtherance of his authority to [either] enforce public safety [and/or] further any aspect of his job, any duty or responsibility."  (T.28)

When the plaintiff's attorney stated that Mayor Giordano was the "CEO" of Waterbury this Court stated, "But even [a] CEO can act in a capacity other than his corporate capacity. Not everything a CEO does is attributable to the corporation.  By the same token, not everything the mayor does is attributable to the city.  Under the case law, doesn't it have to be some action taken at least arguably in furtherance of some city policy?  The policy has to be the moving force behind what he did."  (T. 32)

There are two issues that arise from the Court's analysis to which the plaintiff seeks to address, to wit, (1)  Where a plaintiff alleges a federal constitutional violation under § 1983

2

against both a municipality and its Mayor (in his official capacity)—its final-policy maker in the areas of safety and law enforcement, social issues and political issues, because of the Mayor's perpetration of the constitutional violation; need the plaintiff have to prove that the Mayor was engaged in some "ribbon cutting" act in furtherance of his job to constitute the "municipal **moving force" behind the Mayor's deprivation of federal rights**? (2) In this case, could Mayor Giordano act in a capacity other than his [Mayoral] capacity? (T. 32) Because these two issues are so intertwined, they shall be discussed together.

The short answer to issue 1 is no.

A review of the following thirteen (13) Supreme Court decisions yields three alternatives for isolating municipal policy after <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978):

I.      Where the appropriate final policy maker or the municipality creates and disseminates a statement of policy and the injurious act complained of is purely the execution of the policy. <u>Monell</u>, <u>supra</u>, at 660-661, 98 S.Ct. at 2020-2021.

II.     Where no rule has been designated as policy but a federal law has been violated by the final policymaker. "[T]he choice of policy and its implementation are one, and the first or only action will suffice to ground municipal liability simply because it is the very policymaker who is acting. <u>See</u>, <u>Pembaur</u>, <u>supra</u>, 475 U.S. at 480-481, 106 S.Ct. at 1298-1299."

III.    "[W]here the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government "is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390, 109 S.Ct 1197, 1205, 103 L.Ed.2d 412 (1989).

---

[1] The reference to (T) is to Addendum I, attached, which is a transcript of a portion of the April 4, 2006 hearing upon the parties' motions and objections relative to summary judgment.

Bryan County, supra, 520 U.S. at 417-418, 117 S. Ct. at 1395. (Souter, Stevens & Breyer, dissenting.)

In the decisions of Monell, supra, Owen v. City of Independence, Missouri, 445 U.S. 622, 100 S.Ct. 1368, 63 L.Ed. 2d 673 (1980), City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed. 2d 791 (1985), Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed. 2d 114 (1985), Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct 1197, 103 L.Ed. 2d 412 (1989), Jett v. Dallas Independent School District, 491 U.S. 701, 109 S. Ct 2702, 105 L. Ed. 2d 598 (1989), Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L. Ed. 2d 301 (1991), Collins v. City of Harker Heights, Texas, 503 U.S. 115, 112 S.Ct. 1061, 117 L. Ed. 2d 261 (1992), Leatherman v. Tarrant County Narcotics Intelligence and coordination Unit, 505 U.S. 163 113 S.Ct. 1160, 122 L. Ed. 2d 517 (1993), Board of the County Commissioners of Bryan County, Oklahoma v. Jill Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L. Ed. 2d 626 (1997) and McMillian v. Monroe County, Alabama, 520 U.S. 781, 117 S.Ct. 1734, 138 L. Ed. 2d 1 (1997) the Supreme Court never articulated the standard that the final policy maker had to be in active furtherance of some legitimate exercise of his function when he injures another's constitutional rights in order for his tortuous actions to constitute the municipal "moving force" behind the deprivation. Mayor Giordano's and, thus, the City of Waterbury's actions place squarely within the second alternative above. It is from this point that we now define the character and ambit of the "moving force" which necessarily must be present in order for a municipality to incur civil

liability under § 1983 for the unconstitutional injury the municipality's final policymaker

visits, while under the color law, upon a victim.

In answer to how this plaintiff has satisfied the Supreme Court's standard of

establishing Waterbury's "moving force" we commit to this Court the following language from

Bryan County:

> In any § 1983 suit. . .the plaintiff must establish the state of mind
> required to prove the underlying violation. Accordingly, proof that a
> municipality's . . . authorized decision maker has intentionally deprived a
> plaintiff of a federally protected right **necessarily establishes that the
> municipality acted culpably**. Similarly, the conclusion that the action
> taken or directed by the municipality['s]. . .**authorized decision maker**
> itself violates federal law **will also determine that the municipal action
> _was_ the moving forced behind the injury** of which the plaintiff
> complains.

Bryan County, supra at 520 U.S. at 405, 117 S.Ct. at1389. (Emphasis added)

Even though the plaintiff does not have to establish that the Mayor was engaged in

some official "ribbon cutting ceremony" at the time of the plaintiff's injury, as a practical

matter; the plaintiffs have already proven it.

Given the authority the Mayor, an elected public official, enjoyed under Connecticut

and Waterbury law as the plaintiff has previously set out before this Court, when the defendant

Mayor was in the presence of his constituents; as he was when he was with the plaintiff, he

was "the government itself—'the social organ to which all in our society look for the

promotion of liberty, justice, fair and equal treatment, and the **setting of worthy norms and

goals for social conduct**.'" Owen, supra 445 U.S. at 651, 100 S.Ct. at 1415. (Emphasis

supplied) "[The] setting of worthy norms and goals for social conduct" we submit falls within

the ambit of the Mayor's "official conduct" or "authorized actions"; as such, it was the policy

of Waterbury. In this sense, the Mayor cannot "act in a capacity other than his [Mayoral] capacity.[2] As the Mayor, Mayor Giordano was a public figure, as a public figure he was always acting in his official capacity.

In so far as the Supreme Court's analysis of municipal liability for unconstitutional acts of its final policymakers under § 1983 is concerned, under circumstances where its final policymaker causes an unconstitutional injury to another while the final policy maker is acting under color of law and that injury is within the domain of the policy maker's authority, the Supreme Court has held that it is not an application of respondeat superior to hold the municipality liable for that injury.

> To hold a municipality liable for actions ordered by such officers exercising their policymaking authority is no more an application of the theory of respondeat superior than was the holding the municipalities liable for the decisions of the 'city Councils in <u>Owen</u> and <u>Newport</u>. . . . .We hold that municipal liability under §1983 attaches where—and only where—**a deliberate choice to follow a course of action is made from among various alternatives by the official. . .responsible for establishing final policy with respect to the subject matter in question.**

<u>Pembaur</u>, <u>supra</u>, 475 U.S. at 483-484, 106 S.Ct at 1300. (Emphasis supplied) (Citations omitted)

The alternatives before Mayor Giordano on those occasions when he molested the plaintiff were to encourage her to volunteer at some charitable endeavor commensurate with her age,

---

[2] This may seem harsh but it is consistent with the tenets of defamation law. See, <u>Oscala Star-Banner Co. v. Leonard Damron</u>, 401U.S. 295, 300-301, 91 S.Ct. 628, 632, 28 L. Ed. 2d 57 (1971) holding that a sitting Mayor was subject to the <u>New York Times v. Sullivan</u> rule of having to show a knowing falsehood or reckless disregard of the truth of a falsely alleged "purely private" instance of misconduct on the part of the Mayor because the Supreme Court held that that allegation of allegedly private misconduct was still "official conduct" of the Mayor because it impacts upon his fitness for office. This ruling was consistent with Connecticut common law that predated <u>Sullivan</u>. <u>See, Charles Parker Co. v. Silver City Crystal Co.</u>, 142 Conn. 605, 616-617, 116 A.2d 440, 445-446 (1955)(Holding that a false defamatory statement was deemed privileged if the statement concerned a candidate for public office and/or a public official's "official conduct" or "fitness for office" because their actions, in or out of office affect the public welfare.)

educational and maturation level, to encourage her to seek educational and social enrichment

beyond classes at school, to take her to the police department for protection, to take her to the

Department of Children & Families for protection, to inquire about her living arrangements

and family needs, and if found wanting; direct and/or take her to a private, city and/or state

agency to assist her in striving to live by and obtain **"worthy norms and goals for social

conduct."** Owen, supra 445 U.S. at 651, 100 S.Ct. at 1415. (Emphasis supplied)

The Mayor Waterbury chose, however, to sexually exploit this child under the threat of

arrest and punishment of her family. Further, for municipal liability purposes; where the

commission of injurious constitutional violations in violation of § 1983 by its final policy

maker is in the area where the final policymaker's authority lies—

> [I]t does not matter that the policymaker may have chosen a course of
> action tailored only to a particular situation and not intended to control
> decisions in later situations if the decision to adopt that particular course
> of action is intentionally made by the authorized policymaker, it surely
> represents an act of official government policy and the municipality is
> equally responsible whether that action is to be taken only once or to be
> taken repeatedly.

Pembaur, 475 U.S. at 481, 106 S.Ct. at 1299.

Additionally, see City of St. Louis v. Praprotnik, a 4-3 plurality decision in which three

justices concurring in the result only stated:

> [I]n Pembaur four of us concluded that it is equally appropriate to hold
> municipalities accountable for the isolated constitutional injury inflicted
> by an executive final municipal policymaker, even though the decision
> giving rise to the injury is not intended to govern future situations. In
> either case, as long as the contested decision is made in an area over
> which the  official. . .*could* establish a final policy capable of governing
> future municipal conduct, it is both fair and consistent with the purposes
> of § 1983 to treat the decision as that of the municipality itself, and to
> hold it liable for the resulting constitutional deprivation.

7

<u>Praprotnik</u>, <u>supra</u>, 485 U.S. at 140, 108 S.Ct. at 933. (Emphasis in original)

It bears repeating that none of the Supreme Court decisions cited above articulated a need to establish that the Mayor or other final policymaker had to be in "furtherance of the city business or for that matter, Mayoral business" at the time of the injury.  Mine you, the plaintiff is not unmindful that the factual context for the above cited cases was the commission of the unconstitutional acts while the wrongdoer was in the course of the performance of the defendants' official duties, however there were no other set of facts before the Supreme Court in those cases.  To now read into the above decisions a necessity for the plaintiff to prove a "ribbon cutting moment" is at variance with the law in this area because to do so would constitute an unsupportable conflation of the final policymaker element of municipal liability with the altogether separate analysis of what constitutes an action under color of law[3].

## CONCLUSION

It is obvious that the citizenry of Waterbury by and large did not believe that Mayor Giordano would lead his city into the mire in which we find ourselves immersed. Further, it can be argued that they are, in some sense, blameless.  However, when it comes to municipal liability our Supreme Court has recognized that, "No longer is individual **'blameworthiness'** the acid test of liability; the principle of equitable loss-spreading has **joined fault** as a factor

---

[3] We submit that as far as this action is concerned the law of the case with respect to Mayor Giordano's actions under color of law is well settled pursuant to the principal of collateral estoppel by dint of the opinion of <u>U.S. v. Giordano</u>, 2006 WL 509427 (2d Cir. 2006).  In <u>U.S. v. Giordano</u> the Court held that "there is no bright line test for distinguishing personal pursuits from actions taken under color of law" and an official can act under color law when he is "off-duty" and liability will attach "nonetheless [when he] invokes the real or apparent power of his office." <u>Id</u>. at 10.  To that end, the defendant Giordano's objection to summary judgment ought be overruled principally because, as we have already shown, the position of Mayor under Waterbury's form of government made the defendant a public official and final policymaker in the areas of political rights, social issues and safety and law enforcement when he was in the presence of his constituents; i.e., a leader and as such was always acting under color law and hence, in furtherance of municipal business thus being the "moving force" necessary for municipal and his official and individual § 1983 liability.

8

in distributing the costs of official misconduct." <u>Owen</u>, <u>supra</u>, 445 U.S. at 657, 100 S.Ct. at 1418. (Rejecting qualified immunity for municipalities) (Emphasis supplied)  The Supreme Court has considered the impact of exposing a municipality and thereby, its citizenry, to damage awards for official misconduct on our republic and found that, "[a] damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is **only accentuated** when the wrongdoer is the institution that has been established to protect the very rights it has transgressed." <u>Id</u>. 445 at 651, 100 S. Ct. at 1415.  (Emphasis supplied)

Finally, the plaintiff entreats this Court to grant her motion for summary judgment as against both defendants, to overrule the defendants' objections to her motion for summary judgment, and to sustain her objections to the City's motion for summary judgment.

RESPECTFULLY SUBMITTED,

ATTY. LYNN JENKINS GUARDIAN AD LITEM
THE PLAINTIFF

BY: _____

**ATTY. ERSKINE D. McINTOSH**
**FEDERAL BAR NO. CT 09743**
**THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.**
**3129 WHITNEY AVENUE, SECOND FLOOR**
**HAMDEN, CONN.  06518-2364**
**(203) 787-9994**
**FAX (203) 848-1213**

**COUNSEL FOR THE PLAINTIFF**

# C E R T I F I C A T I O N

This is to certify that a copy of the foregoing and attached addendum was sent on this the _2 4_ day of April, 2006 to:

Gerald L. Harmon, Esquire
The Law Offices Of Gerald L. Harmon
290 Pratt Street
Meriden, Conn. 06450

Lynn Jenkins, Esquire
129 York Street, Apt. 8-L
New Haven, CT 06511

Michael Mackniak, Esquire
87 Meadow Street
Naugatuck, CT   06770

Michael S. Hillis, Esquire
Dobriski, Knapsack & Hillis
129 Whitney Avenue
New Haven, CT  06511

Allison Louise Jacobs, Esquire
84 Sherman Avenue
Hamden, CT 06518

Andrew B. Bowen, Esquire
1804 Post Road East
Westport, CT  06880-5683

Elliot B. Spector, Esquire
Susan T. Pearlman, Esquire
Sack, Spector and Karsten
One Congress Street
Hartford, CT 06114

**ATTY. ERSKINE D. MCINTOSH**

19 MOTION-POST SUMMARY JUDGMENT HEARING SUPPLEMENTAL MEMO

10

# ***ADDENDUM I***

COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x

DOE, ET AL                :  No. 3:01CV-2298 (SRU)
                          :  915 Lafayette Boulevard
        vs.          :  Bridgeport, Connecticut
                          :
                          :  April 4, 2006
CITY OF WATERBURY, ET AL    :

- - - - - - - - - - - - - - - x

MOTION HEARING

B E F O R E:

THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

FOR THE PLAINTIFFS:

LAW OFFICES OF ERSKINE D. MCINTOSH
    P. O. Box 185789
    Hamden, Connecticut 06518-0789
BY: ERSKINE D. MCINTOSH, ESQ.

    HUNTER J. TZOVARRAS, STUDENT INTERN

GERALD HARMON, ESQ.
    290 Pratt Street
    Meriden, Connecticut 06450

DOMBROSKI, KNAPSACK & HILLIS
    205 Whitney Avenue
    New Haven, Connecticut 06511
BY: MICHAEL STANTON HILLIS, ESQ.
    JENNIFER BARONE, ESQ.

MICHAEL W. MACKNIAK, ESQ.
    87 Meadow Street
    Naugatuck, Connecticut 06770

(Continued)

FOR THE DEFENDANTS:

    NOBLE, SPECTOR, YOUNG & O'CONNOR
        One Congress Street, 4th FL
        Hartford, Connecticut  06114
    BY:  ELLIOT B. SPECTOR, ESQ.


    ANDREW BOWMAN, ESQ.
        1804 Post Road East
        Westport, Connecticut  06880



        Susan E. Catucci, RMR
        Official Court Reporter
        915 Lafayette Boulevard
     Bridgeport, Connecticut  06604
        Tel: (203) 246-6385

1    rights and social issues, so the City agrees to that.  The

2    question then is whether sexually abusing the girls

3    violated their rights in one of those four areas that he's

4    a final policy-maker.

5          THE COURT:  Is that really the issue?  Violated

6    their rights in one of those areas, or his activities in

7    furtherance of city policy in one of those four areas has

8    resulted in the deprivation of their constitutional

9    rights?  The problem is that's the disconnect.  It can't

10   simply be that you can say he's a policy maker with

11   respect to public safety and what he did violated public

12   safety of these two girls.  That's not enough, is it?

13   Don't you have to say what he did, what he was doing in

14   connection with his authority to set policy or enforce

15   public safety and the way that he did it resulted in

16   deprivation of constitutional rights?

17         MR. TZOVARRAS:  I believe, Your Honor, that you

18   may be almost equating the liability of 1983 with a

19   respondeat superior sort of analysis.  I don't believe

20   there's any cases that say there has to be a furtherance

21   of the city policy.  I mean, what they say, and I point I

22   believe to the MacMillan (ph) case in the supreme court

23   and it says that the final policy maker for the city

24   deprived the victims of their constitutional rights in the

25   area in which he is the, he or she is the final

1    policy-maker, and that's really what we're looking at

2    here.

3            THE COURT:  Well, let me cite you to the Board

4    of County Commissioners of Bryan County Oklahoma v. Brown.

5    "In order to find a municipality liable for the single

6    action of a municipal official, the court must first

7    determine whether the official at issue was, quote,

8    'responsible for establishing final governmental policy,'

9    end quote, in particular areas that form the basis of

10   Section 1983.  Additionally, the court must determine

11   whether, quote, 'deliberate action attributable to the

12   municipality itself is the moving force behind the

13   plaintiff's deprivation of federal rights,'" unquote.

14           That's what I'm getting at.  It is that quote,

15   "deliberate action attributable to the municipality itself

16   is the moving force behind the plaintiff's deprivation of

17   federal rights," unquote.  I just don't see that.  How can

18   you say that deliberate action attributable to the city is

19   what caused this?

20           MR. TZOVARRAS:  Because, Your Honor, the actions

21   of the mayor, the final policy-maker, is the deliberate

22   action of the city, is the moving force of the city.  And

23   there is -- I'll point, I'll take a second look at the

24   point and point to case law on that but I believe the

25   cases do say that.

```
 1          THE COURT:  Four is my problem.  What you're
 2    saying is the mayor is the final policy maker in certain
 3    areas.  Absolutely, I agree.  Then you're saying the mayor
 4    did something bad that seems to be in violation of what
 5    the mayor ought to be doing in some areas in which he's
 6    the final policy-maker, therefore, we survive summary
 7    judgment, and my problem with that is there has to be
 8    some, as I read the cases there has to be some deliberate
 9    action that's attributable to the city, not simply that
10    it's action by a final policy-maker but that it's in
11    connection with the authority granted that final
12    policy-maker.

13          So, for example, Giordano is the final policy
14    maker with respect to public safety.  If he goes and he
15    arrests protesters and says I'm doing this as part of my
16    authority as a final decision-maker for public safety,
17    it's not safe on the streets with all these protesters,
18    and they successfully show their First Amendment rights
19    were violated, then that works.  The city's liable because
20    what he's done is in furtherance of his authority to
21    enforce public safety.  He stepped over the line.  The
22    problem I'm having in this case is I don't see that he's
23    even attempting to further any aspect of his job, any duty
24    or responsibility.  All he's doing is gratifying himself
25    at the expense of these girls and facilitating it because
```

 1   of his position and that's what I'm really struggling

 2   with.  Is that enough?

 3          MR. McINTOSH:  I would direct the court to the

 4   case, to Jess v. Barns (ph) at 208 F3d 49, 2nd Circuit,

 5   2000.  And in that regard, the court held that a plaintiff

 6   seeking to hold municipalities liable under 1983 based on

 7   an alleged constitutional violation arising from

 8   unofficial custom may prove the causation element by

 9   showing either, one, that the official who is a final

10   policy maker in the area deliberately committed or

11   commanded the violation of a plaintiff's federal rights.

12   So, I will tell you that this decision from the circuit

13   clearly is at variance with the standards set in the

14   Oklahoma case and because we're in the 2nd Circuit, we

15   ought to follow this one.

16          THE COURT:  I was citing the U. S. Supreme

17   Court.

18          MR. McINTOSH:  Which case was that again?

19          THE COURT:  Board of County Commissioners of

20   Bryan County Oklahoma v. Brown, 520 US 383 at 400, 1997.

21          MR. McINTOSH:  Then I think that, then there

22   needs to be some focus, I guess, on City of St. Louis v.

23   Crabtree.  That is also an U. S. Supreme Court case that

24   held that only those municipal officers who are final

25   policy-making authority make by their actions and subject

```
 1    municipal government to liability.
 2              THE COURT:  Is that Pratpronick (ph)?
 3              MR. McINTOSH:  No, Pratpronick, City of St.
 4    Louis v. Pratpronick, 485 US --
 5              THE COURT:  I know the case.
 6              MR. McINTOSH:  And there's then Jeff v.
 7    Dallas -- I won't use that case right now but I think that
 8    that U. S. Supreme Court case, I think, is controlling in
 9    this context.  And I understand the court's concern but I
10    believe also that, I think MacMillan v. Monroe County
11    Alabama also is one that I think we would rely upon in
12    arriving at this situation.  And I would also direct the
13    court to the -- yes, this is the Board of County
14    Commissioners, right.  We have that case in our brief here
15    and I think there's language in there that proves that
16    when an authorized decision-maker has intentionally
17    deprived a plaintiff of a federally protected right,
18    necessarily establishes that municipality acted culpably.
19    Similarly, the conclusion that when the action taken or
20    directed by the municipality or its authorized
21    decision-maker itself violates federal law, will also
22    determine that the municipal actor is the moving force
23    behind the injury to which the plaintiff complains.  And I
24    think in this situation, I have an understanding of the
25    court's position here but this is not a respondeat
```

1     superior issue.  I don't believe the issues of <u>Monell</u> are

2     implicated in this situation at all.  I think that --

3             THE COURT:  Well, the quote you just read talked

4     about authorized decision-maker.

5             MR. McINTOSH:  Yes, actions of authorized

6     decision-maker.  Yes, correct.

7             THE COURT:  What decisions, what authorized

8     decision are we talking about here?  What decisions that

9     were authorized by the City of Waterbury are at issue in

10    this case?

11            MR. McINTOSH:  The authorized decision in this

12    case that we're talking about is Mayor Giordano's position

13    as leader, and that may sound amorphous or whatever but

14    that's precisely what he was.  He was the leader in

15    several areas.  He was the leader in several areas.  He

16    was the authorized decision-maker in three general areas

17    that subsumed how the city, how the city relates to its

18    constituents.  That's how -- and I don't think that's a --

19    it's necessarily broad because the very nature of his job

20    was broad.  He wasn't just a cop, he wasn't just a

21    teacher, he wasn't just a social worker, he wasn't just an

22    administrator, he wasn't just a statesman.  He was all of

23    those things by virtue of state and federal -- state and

24    municipal law.  He was the CEO and, as such, his conduct

25    has more ramifications than the tax assessor or the tax

1    collector or the gentleman that runs the public utility --

2    excuse me, the public works department.

3         THE COURT:  But even CEO can act in a capacity

4    other than his corporate capacity.  Not everything a CEO

5    does is attributable to the corporation.  By the same

6    token, not everything the mayor does is attributable to

7    the city.  Under the case law, doesn't it have to be some

8    action taken at least arguably in furtherance of some city

9    policy?  The policy has to be the moving force behind what

10    he did.

11         MR. McINTOSH:  I think that he makes the, he

12    makes the policy and you look to his indicia of control,

13    controlling of the policy.  It certainly wasn't the city's

14    formal policy or any municipality's formal policy to

15    condone this kind of sexual act.  However, he had keys to

16    the Town Hall, so in his capacity as mayor, some of this

17    took place in Town Hall, in his office, and so you look to

18    that, his opportunity to abuse his authority.  I don't

19    think that the security guard for the City of Waterbury

20    could have showed up on a Saturday or whatever, opened up

21    the door and had at it in the mayor's office.  So, he was

22    there and he was abusing his position as leader in all of

23    the areas of which I previously indicated.

24         MR. HARMON:  In correlation with that, Your

25    Honor, the courts have held that an official made the

# C E R T I F I C A T E

I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (203) 246-6385